WATSON, executor, &c., *vs.* CAMPBELL and others.

Where a commissioner of deeds, in a certificate of acknowledgment, certifies to a material requisite to the validity of a certificate, and without which he could not legally take an acknowledgment, viz: that he knows the parties by whom the instrument purports to have been executed—which statement is untrue—such certificate is a nullity, both in respect to the recording of the instrument, and as proof of the execution thereof.

As between the parties, however, the *instrument* would be valid, without any certificate of acknowledgment, upon proof that it was executed and delivered by the grantors.

The court will not interfere with the finding of a referee, upon a question of fact, as to which there is conflicting testimony; unless the clear weight of evidence shows that he has erred.

APPEAL by the defendants, from a judgment of foreclosure, rendered at a special term on the report of a referee.

*F. Byrne,* for the appellants.

*R. Gillen,* for the respondent.

INGRAHAM, J: The defendants move to set aside a judgment of foreclosure entered on the report of a referee. The mortgage appears to have been dated in May, 1852, and acknowledged and recorded in December, 1852. The commissioners, before whom the acknowledgment was made, certify that they know the parties making the same. The defendants set up in their answer that the bond and mortgage were forgeries, and that they never signed or authorized any person to sign the same for them. The mortgage conveyed the whole of lot 58, and the right, title and interest of the mortgagor in lot 59, as described in said mortgage, with another lot. It appears that at the time they only had title to lot 58 and one half of lot 59. Upon the trial, Samuel F. Cogswell, the commissioner before whom two of the mortgagors acknowledged the execution of the mortgage, certified that he wrote and signed the certificate, and that he was certain the parties acknowledged the mortgage before him. That he did not know either of the persons making the acknowledgment, and that the reason why he says the defendants acknowledged it, was because he never signed as commissioner, unless the person signing it acknowledged it before him.

This witness, on examination, stated that he had, since his former examination, been to the house of the defendant, when the whole matter became familiar to him; that he had seen the defendants since that time, and recognized them, and was confident that both of them were the parties who acknowledged the mortgage before him. Upon the evidence the referee found that the mortgage was executed by the defendants.

So far as the certificate of the commissioner is relied on, it is a nullity; both as to the record and as proof of the execution. The commissioner of deeds has seen fit to certify to a material requisite to the validity of the certificate, which, on his examination, he proves to have been untrue, and without which he could not legally take the acknowledgment. Had he done his duty in taking this acknowledgment, he would have required proof of the identity of the persons appearing

Watson *v.* Campbell.

before him, and this defense would not probably have been made. The case shows the impropriety of a commissioner of deeds, in such an acknowledgment, certifying that he knows the parties, without any other knowledge than a mere introduction, or seeing the signature written. He thereby endangers the security, and exposes himself to liability for damages arising therefrom. In the consideration of this case we must lay out of view the certificate of the officer, as neither entitling the paper to be recorded, nor as affording any proof of the execution of the mortgage. As between the parties, however, the mortgage would be valid, upon proof that it was executed and delivered by the defendants, without the certificate of acknowledgment. Cogswell, the commissioner, is the subscribing witness. He testifies to the execution of the paper in his presence by persons he did not then know, but states that he has since seen the defendants, and recognizes them to be those persons. He says, "I swear these two men (pointing to the defendants) now present, came before me and acknowledged the bond and mortgage." Mr. Stuyvesant testifies that he has seen the defendant James Campbell write, and believes the signature to be his.

The mortgage appears to have been drawn by B. C. Ferris, and the money upon it was received by him from the plaintiff's testator, or from her agent. It appears that Ferris was the attorney of Campbell; that Campbell was at Ferris' office to procure a loan on mortgage; that Ferris told him to bring his deed, to search the title. This was in the year 1852. It also appears that Campbell requested Mr. Stuyvesant, another commissioner of deeds, to go to the house and take the acknowledgment of his wife; that he rode with Campbell to his house in Madison street, and there took the acknowledgment.

In opposition to this testimony the defendants proved that two or three witnesses did not think the signature was his; that Campbell, when applied to, about a year since, denied the execution of the mortgage; and that the interest had been paid by Ferris up to the year 1855, and not by the Campbells.

Watson *v.* Campbell.

Upon this testimony, contradictory in its character, the finding of the referee is conclusive.   There is nothing in the evidence to warrant us in saying that the referee has not decided correctly or according to the weight of the testimony, and we might leave this case simply on that long established and safe rule that the court will not interfere with the finding of a jury or referee on a question of fact, unless the clear weight of evidence shows that he has erred.   But in this case I am disposed to add that the referee has found in accordance with the evidence.   How far the credibility of Cogswell was affected by the acknowledgment that he had signed a certificate which was in fact untrue, was for the referee exclusively to decide.   He has seen fit to credit his testimony.   The testimony of Mr. Stuyvesant is not in any way impeached, either as to the identity of Campbell or the acknowledgment of his wife, and from all the facts in the cause it seems to me that any other finding would have been against the evidence, and against the presumptions which naturally are to be drawn from it.   And when we remember that this finding imputes to the parties nothing criminal except the possible misapplication of the money by the attorney, while a contrary decision would involve both a charge of forgery and a charge of perjury as to attorney and witnesses, such a finding is not to be rejected.

I conclude, from all the facts in the case, that the defendants have not received the money, but have been defrauded out of the proceeds of the mortgage.   While I concur with the finding of the referee that the defendants executed the papers, the fact that for two or three years the attorney of the defendants paid the interest on the mortgage, and that they were not called on to pay it, leads strongly to the supposition that although he had the money from the mortgagee, he never paid it over to his clients, who had left with him the mortgage; and that the defendants, in the walk of life in which they moved, one of them not signing his name but only making a mark, and neither having heard any thing from the mortgage after it was signed, might have considered it out of ex-

istence, and might have honestly denied its existence when, in 1856, nearly four years after its execution, they were first notified of any claim upon it.

The suggestion that the mortgage covered property which was not conveyed to the defendants until after the execution of the mortgage, is not correct. On examining the mortgage it will be seen that it only conveys *the right and interest* of the mortgagors in lot 59. If, at that time, the mortgagors only owned one half of that lot, it could not be enforced against the remaining half, and the subsequently acquired title to that half would not be subject to the lien of the mortgage.

The case is a hard one for the defendants. They suffer, however, if they have not received the proceeds of the mortgage, by the fraud of their own agent, and the mortgagee is innocent of any participation in such fraud. Under such circumstances she had the better right and was entitled to be paid.

The report and the judgment are erroneous, however, in holding the whole of lot 59 subject to the plaintiff's mortgage. The mortgage only conveyed the right, title and interest of the mortgagors as it existed at the execution of the mortgage on that lot. The judgment should be so amended as to direct the application of one half of the proceeds of lot 59 to the payment of the plaintiff's mortgage; that the proceeds of the other half be applied to the payment of Wynkoop's mortgage, and any surplus to be paid to James Campbell, subject to a lien thereon for any deficiency in the residue of the property in paying the plaintiff's claim.

Unless the plaintiffs so amend the judgment in ten days, the judgment should be set aside and the report referred back to the referee to correct the same accordingly.

DAVIES, P. J., concurred.

CLERKE, J. I concur, on the ground that it is expedient not to disturb the finding on facts deduced from a conflict of testimony; but I doubt, if the case were before me as a single

judge without a jury, whether I should have come to the same
conclusions as the referee.

Judgment modified.

[NEW YORK GENERAL TERM, November 4, 1858. *Davies, Clerke* and *Ingraham,* Justices.]