(21 Misc. Rep. 365.)

In re McCLOSKEY.

(Supreme Court, Special Term, Kings County. October 18, 1897.)

1. ELECTIONS—NOMINATIONS—LIMITATION OF NUMBER.
    Courts will not limit the number of nominations to be placed upon an official ballot simply because of the expense to be incurred in the printing thereof.

2. SAME—CERTIFICATE OF NOMINATION—SIGNER'S OATH.
    Election Law, § 57, requires that a certificate of nomination be subscribed only by electors residing in the district for which the nomination is made, and that each elector signing shall add his place of residence, and make oath that he is an elector and has truly stated his place of residence, and the making of such oath is to be proved by the certificate of the official before whom it is taken. Held, that the certificate of the oath need not state that affiants are known by the officer to be the same who signed the nomination certificate, or that they signed in his presence.

3. SAME—RESIDENCE OF SIGNER—JUDICIAL NOTICE.
    Where the oath to a certificate of nomination does not state that the signer is an elector of the district for which the nomination is made, the court will take judicial notice that the certificate shows that fact by the residence given, and the oath will be construed as made with reference to it.

On complaint of William McCloskey, under section 56 of the election law, the board of police commissioners in the city of New York declared that the nominating certificates of the independent body named the Citizens' Union are valid, and the proceeding was brought to the supreme court for review. Decision affirmed.

Roger M. Sherman and S. F. Kneeland, for complainant.

Simon Sterne, William B. Hornblower, and Joseph Laroque, opposed.

GAYNOR, J. It is a part of the history of the state, that at the time our present election statute was first enacted, municipal government had generally fallen and settled into the control of dishonest and criminal persons, who were mere politicians by trade, and without any lawful occupations, and who had no interest in government or in politics, except to obtain opportunity to enrich and aggrandize

themselves by looting the public treasury. They obtained and held such control by means of their control of party organizations, and of a system of voting which exposed the voter to the oversight and strong influence of such organizations at the polls. In this way they were enabled to nominate and elect to high office, not themselves, but individuals of better name and fame, willing, however, to be their mere tools when elected, and to place allegiance to those who thus put them in honorable office, above official obligation and duty to the community. The government of many of our cities had in this way become so low, base and corrupt, that no account of the like could be found in past history except in the case of governments and nations which were fast tottering to their fall, either from the general moral debasement or the general despair of their citizens. It was with the avowed purpose of helping the electors to lift government out of this condition that our election statute was passed. Its object was to make independent nominations and independent voting not only possible but easy; to enable every one to vote freely according to his manhood and conscience. Such object was expressed in its first title, which designated it as "An act to promote the independence of voters at public elections."

The foregoing conditions have been called to mind, only to put in contrast with the high purpose out of which our election statute grew, the contention in this case, very ably presented, that the provisions of that statute now under review should be technically and strictly construed with the paramount view of preventing the cost to the public of printing too many nominations upon the ballots. The two decided cases which are cited (Oliver Case [Super. N. Y.] 31 N. Y. Supp. 467, and Klinker Case [Sup.] 31 N. Y. Supp. 469) are some authority for such contention, but they are not controlling. To put such question of expense above the great purpose of the act, in construing its provisions, would be a grave misconception. To print nominations like these is a matter of small expense; to reject them would prevent many from conveniently voting as they wish to, and might sometimes destroy a great movement struggling to prevent government from becoming a mere subject of individual spoil.

This is a review under section 56 of the election law of the decision of the board of police commissioners that the nominating certificates of the independent body named the "Citizens' Union" are valid. Among the objections enumerated, the chief one is in the contention that such certificates are insufficient and invalid upon their face, for not identifying the persons who signed them as the same persons who make the oaths thereto.

Section 57 of the said law provides that such a certificate of nomination may be subscribed only by electors residing in the territory or district for which the nomination is being made. It requires that each elector who signs such certificate shall add his place of residence to his signature, and make oath that he is an elector, and has truly stated his residence. It then requires that the making of such oath shall be proved by the certificate of the notary or other officer before whom it is taken. The certificate of the oath in the present case is that the persons who signed appeared before the notary, and that

each made oath that he is an elector, and truly stated his residence in the nominating certificate. It does not state that the persons making such oath are known by the notary to be the same who so signed, or that they signed in his presence. The certificate of the oath does not, therefore, identify the signers of the certificate of nomination with the affiants, and it might be difficult to prosecute them for perjury. It is true this gap does exist; but it is because it exists in the statute itself. It might be easy to construe the statute to mean that the notarial certificate should show such identity, as is the rule with like certificates; but it literally follows the words of the statute, and that must suffice. It is not for the court to require it to be any more precise.

To the objection that the oath is only that the signer is an elector, without stating that he is an elector of the territory or district for which the certificate of nomination is made, it is enough to say that the court will take judicial notice that the certificate of nomination shows that fact by the residence given, and the oath must be construed as made in reference to it.

The other objections it seems to me are embraced in the disposition of these two. The decision of the board of police commissioners is sustained.