In the Matter of SAMUEL W. PHILLIPS et al., Respondents. H. WARREN HUBBARD, as City Clerk of the City of New York, et al., Appellants.

Argued October 28, 1940; decided October 29, 1940.

*William C. Chanler, Corporation Counsel* (*Frederick vP. Bryan, Seymour B. Quel* and *Russell Lord Tarbox* of counsel), for appellants.

*Kenneth M. Spence* for Citizens Non-Partisan Committee, *amicus curiæ.*

*Harold Riegelman* and *Jacob M. Dinnes* for Citizens Budget Commission, Inc., *amicus curiæ.*

*Samuel D. Smoleff, Dorothy Kenyon* and *Louis S. Lewis* for Citizens Union of the City of New York et al., *amici curiæ.*

RIPPEY, J. On September 6, 1940, a petition was filed with the City Clerk of the City of New York for the purpose of initiating amendments to the Charter for submission to the duly qualified voters of said city at the general election to be held on November 5, 1940, pursuant to the provisions of article IX, section 8, of the State Constitution and sections 44 and 45 of the City Charter (effective January 1, 1938). The proposed amendments (1) created a new office, that of City Sheriff, to be appointed by the Mayor, abolished the five county elective offices of Sheriff as presently provided by the State Constitution and the County Law (Cons. Laws, ch. 11) and, with exceptions not here pertinent, transferred their powers, duties and functions to the newly created City Sheriff and (2) created a new office to be known as City Register, to be appointed by the Mayor,

abolished the offices of Register, Register of Deeds and Registrar in the counties within the city and transferred the duties, functions and powers of such offices, with certain specified exceptions, to the newly created office of City Register.

Section 44, subdivision b (1), of the City Charter provides the requirements for initiating such amendments and the procedure to be followed upon filing the petition and reads as follows:

" (1) Not less than fifty thousand qualified electors of the city may file in the office of the city clerk a petition for the submission to the electors of the city at the next general election therein held not less than sixty days after filing of such petition of such a proposed amendment or amendments to the charter to be set forth in full in the petition. The petition may be made upon separate sheets and the signatures of each shall be authenticated in the manner provided by the election law for the authentication of designating petitions. The several sheets so signed and authenticated when fastened together and offered for filing shall be deemed to constitute one petition. A signature made earlier than one hundred twenty days before the filing of the petition shall not be counted. If within ten days after the filing of such petition a written objection thereto be filed with the officer with whom such petition is required by law to be filed, the supreme court or any justice thereof of the first or second judicial district shall determine any question arising thereunder and make such order as justice may require. Such proceedings shall be heard and determined in the manner prescribed by the election law in relation to judicial proceedings thereunder."

Within the time specified in that section general objections and, later, specifications thereof were filed with the City Clerk. Whether specifications of objections were filed within the time specified in the Charter or not or at all was immaterial (*Matter of Goldberg* v. *Cohen*, 281 N. Y. 776). A hearing was had before the proper judicial officer, and decision was entered thereon which provided that the

petition was invalid, ineffective and insufficient for the purpose of initiating such amendments and that the proposed amendments should not be submitted to the voters at the general election November 5, 1940. The Appellate Division unanimously affirmed the order and permitted appeal to this court on the ground that questions of law are involved which ought to be reviewed by the Court of Appeals.

The petition contained 58,320 signatures, of which 35,891 were challenged by the objections and specifications of objections. Upon stipulated facts, the lower courts have found that 18,111 of those signatures could not be counted in making up the required 50,000 signatures since they were either forgeries or must be discarded for other fatal defects in the petition and that at least 15,000 other signatures could not be counted since the signers had not registered as voters for the year 1939 but had falsely stated that they had so registered and the petition did not show otherwise in fact that they were qualified electors. Construing the section of the Charter referred to, it was held that the requirements for designating petitions under sections 135 and 137 of the Election Law (Cons. Laws, ch. 17) were applicable to the petition in question and that neither literal nor substantial compliance with such requirements had been shown. Other questions were raised but not considered in the courts below. We consider only the question as to whether the initiating petition is valid on its face and meets the requirements of the provisions of section 44 of the City Charter.

The petition must contain the signatures of at least 50,000 " qualified electors " of the city. A " qualified elector," within the meaning of section 44 of the City Charter, is a person qualified as to citizenship, age and residence as provided in article II, section 1, of the State Constitution and section 150 of the Election Law to exercise, at a particular election, the elective franchise within the city of New York. He or she must have been a citizen of the United States at least ninety days, who is or will

be on the day of election twenty-one years of age and, additionally, next preceding an election, for one year an inhabitant of the State, for four months a resident of the county and for thirty days a resident of the election district in which he or she offers his or her vote. In some actual or substantial form such facts must appear on the petition. Proof thereof may be substantially shown by a statement accompanying the signature that the signer is a duly registered voter in accordance with the provisions of the Election Law within the governmental subdivision within which his vote may be cast. We have held that where a section of the Charter is silent on the matter of requirements of a designating petition, the Charter provision and the appropriate provisions of the Election Law must be read together and the signers must comply with the provisions of the latter validly to designate by showing, on the face of the petition with their signatures, due registration as a voter within eighteen months prior to the date of their signatures, otherwise the petition will be void (*Matter of Goldberg* v. *Cohen, supra*).

By the express terms of section 44 of the Charter, his or her signature must be authenticated in the manner provided by the Election Law for the authentication of designating petitions. Section 135 of the Election Law provides that the petition may be authenticated by the signer by swearing before an officer authorized to take oaths of affiants that the statements contained in the petition as required by that section subscribed by him or her are true or may be authenticated by the verified affidavit of a witness attached to such sheet of the petition that he knew each of the voters whose names are subscribed to such sheet, and that each of them subscribed the same in his presence and upon so subscribing declared to him that the foregoing statement, made and subscribed by him or her, was true. The latter method of authentication was adopted in the case at bar but at least one of those who acted as witness to many separate sheets of signers to the petition

containing a large number of names testified that he, in fact, knew none of the signers. To what statements does the authentication refer? Obviously and necessarily to the statements required by such signer to the petition. The statements required in a designating petition from a signer are specified in section 135 of the Election Law. It provides, among other things, that a designating petition " must set forth in every instance the full name of signer, his or her residence and election district and the date when the signature is affixed. In the city of New York, the petition must also set forth the assembly district in which the signer resides." The purpose of those requirements and of the authentication thereof as provided is to avoid the possibility of fraud, deception and confusion. The requirements must be fully complied with (*Matter of Kollock* v. *Russell*, 162 Misc. Rep. 299; affd., 250 App. Div. 774).

It must have been the intent and purpose of section 44 of the Charter to require a petition containing statements such as are required by section 135 of the Election Law for designating petitions and authentication as required therein when provision was made that authentication of the signers must be made as provided in the Election Law for designating petitions. To hold that the meaning was otherwise would lead to absurdity and nullify the purpose of authentication. Logically it would mean that nothing more than authentication of 50,000 signatures was required. One or all of them, under such a construction, might be of a person or persons who were not qualified electors of the city of New York. The signature of a person without regard to residence or voting qualification surely was not contemplated by the framers of the section. On the other hand, it was contemplated that the petition should be made and authenticated by signers who were duly qualified electors of the city of New York, the governmental unit to which the amendments were applicable. We cannot attribute to the framers of the Charter any purpose to make determination of whether the signers were or were not such " qualified electors " unduly difficult or impossible. It

would be one or both if interested parties were left without information or facts on the face of the petition itself as to whether the signers were " qualified electors " in the city of New York when the section requires written objections to be filed within ten days after the filing of the petition.

Construction such as we have indicated was entertained by those who prepared the separate sheets in the petition since each printed sheet contains blank spaces to be filled in by the signers under headings showing " date " of signing, " name of signer," " residence," " election district," " assembly district " of the appropriate county and " residence from which registered in 1939." With the information so called for available as to each signer, examination as to the truth or falsity of the authentication required and thus a determination of the validity of the petition within the ten days permitted for filing objections is possible. This construction is given in accordance with the intent and purpose of the requirement of the Charter for authentication as provided by the Election Law.

Additionally, on the stipulated facts, statement of the place of registration of upwards of 15,000 signers and authentication of that statement was false. Nothing is left upon which a determination can be made that the necessary number of " qualified electors " residing in the city of New York signed the petition. Certainly, no reliance can be placed on any general statement in the petition that such signers were qualified electors within the city of New York when no evidence thereof is furnished except a statement which is admittedly false. The truth of facts necessary to give the petition vitality must be shown. The existence of such facts cannot be presumed. Whether supplemental evidence from which the truth of the necessary facts of the signing by qualified electors of the city of New York might have been furnished and considered if timely made (Cf. *Matter of Orange* v. *Cohen*, 268 N. Y. 481), need not be considered, since no such evidence was produced.

As we have pointed out, entirely aside from the fact that the 15,000 signatures above considered cannot be counted,

more than 18,000 others could not be counted for other reasons found by the justice hearing the objections. Rejection of either group of signatures is sufficient to bring the number of signers below the number required by section 44 of the Charter.

The order appealed from should be affirmed, without costs.

LEHMAN, Ch. J. (dissenting). An amendment to the Charter in accordance with the provisions of section 44 of the New York City Charter is a " local law " within the meaning of article IX, section 8, of the Constitution of the State of New York. That term is not confined to laws passed in manner prescribed by legislative statutes at the time when the constitutional provision was adopted. " No limitation is here found upon the method by which these local laws shall be adopted, and no replica of the State Senate and Assembly is necessary." (*Matter of Mooney* v. *Cohen*, 272 N. Y. 33, 39.)

A " qualified voter " is defined by section 150 of the Election Law and the qualifications entitling a citizen to vote are defined in article II, section 1, of the Constitution of the State. The petition proposing an amendment to the Charter must be signed by " qualified electors " and electors are " qualified " who have the " qualifications " exacted by the Constitution and the Election Law. Enrollment or registration is not one of such qualifications. It is merely the method provided by the Legislature " for ascertaining, by proper proofs, the citizens who shall be entitled to the right of suffrage." (State Const. art. 2, § 5.) Those who " present themselves for the exercise of the right of suffrage" must give such proof. (*Matter of Ahern* v. *Elder*, 195 N. Y. 493, 497.) Without such proof they still are " qualified electors " and " qualified voters " who may sign a petition where the statute so provides without requiring, in addition, that the " qualified " elector or voter be enrolled. (Cf. *Johndahl* v. *City of Buffalo*, 245 N. Y. 538.)

The Charter provision does not require such enrollment. It requires only the signature of " qualified " electors and that the " *signatures* of each shall be authenticated in the manner provided by the election law for the authentication of designating petitions." Section 135 provides the manner in which a designating petition may be " authenticated as to all the *signatures*." The signatures of more than fifty thousand signers have been authenticated in the manner so provided. There is no express provision in the statute and no provision that may be read into the statute by fair implication by which compliance with other requirements of the Election Law for valid " designating petition " may be made the test of validity of a petition filed in strict accordance with section 44 of the Charter.

The fact that 15,000 signers certified that " my place of residence is truly stated opposite my signature hereto, and that the place of residence from which I registered in the year 1939 is likewise truly stated opposite my signature," though in fact they had not registered in the year 1939, does not in my opinion sustain any inference of fraud where there is no proof in addition that the signers did not in fact reside at such address in 1939.

The orders of Special Term and Appellate Division should be reversed and objections dismissed.

LOUGHRAN, LEWIS and CONWAY, JJ., concur with RIPPEY, J.; LEHMAN, Ch. J., dissents in opinion in which FINCH and SEARS, JJ., concur.

Order affirmed.