In the Matter of Jennie Kaplan, Petitioner.
Isaac B. Greenman et al., Respondents.
Supreme Court, Special Term, Bronx County, July 19, 1945.

*John T. Power* and *Louis Bennett* for petitioner.

*Isaac Ben Greenman*, respondent in person.

Eder, J. This is an application for an order to invalidate and declare null and void a designating petition filed by or on behalf of the respondent Greenman (hereafter called respondent), designating him as a candidate for nomination by the Democratic Party for Justice of the Municipal Court of the City of New York, Borough of The Bronx, Second District, and directing that the respondents herein constituting the Board of Elections of the City of New York strike from their records the aforesaid designating petition and refrain from printing in the ballots for the next primary election to be held on July 31, 1945, the name of the respondent.

The basic ground upon which the order is sought is that the respondent has not obtained the minimum number of 750

valid signatures of duly qualified enrolled voters of the Democratic Party for the nomination on his designating petition for the said office to be filled.

Upon the hearing conducted by this court, it appeared that the respondent obtained 1,501 signatures, of which 735 signatures are invalid, leaving 766 signatures, and the question is how many of them may be counted and regarded as sufficient under the provisions of section 135 of the Election Law. The said section prescribes the form of the petition; it contains a form of acknowledgment to be signed by an official authorized to take affidavits, with his official title, attesting that all of the voters signing came before him personally and made oath and were to him personally known. It further provides that the petition also may be authenticated as to all the signatures upon a separate sheet, by appending at the bottom of such sheet an affidavit of a witness, who is a qualified voter of the State, in the form therein set forth, and stating that the subscribing witness knows each of the voters whose names are subscribed to the sheets of the said petition and that each of them subscribed the same in his presence and upon so subscribing declared to him that the statement made and subscribed by him or her, was true. This is but the equivalent of an acknowledgment in affidavit form.

One Samuel Clasner received petitions on behalf of the respondent, comprising six pages, and he testified that he would inquire of persons whose signatures he solicited if they were enrolled voters of the Democratic Party, and upon receiving an answer in the affirmative he thereupon requested them to sign the petition, which they did in his presence; he testified further that he did not personally know any of the signers. In this connection it appears that there are only sixty-two valid signatures on the petitions whereon Clasner signed as the subscribing witness, to wit, on page 36, six signatures; on page 51, fourteen signatures; on page 59, eleven signatures; on page 60, nine signatures; on page 62, twelve signatures; and on page 68, ten signatures.

A critical point involved is whether the statutory phrase in the affidavit of the subscribing witness, i.e., " I know each of the voters whose names are subscribed ", means that he must personally know each signer, or whether the statute is satisfied if, in making such statement, he relies solely on the signer's declaration and oath. If it is personal knowledge which is required then the petitions which Clasner signed as a subscribing witness are fatally defective; in that event the requisite

number of signatures has not been acquired by the respondent to qualify him under the statute.

I am of the opinion that the signers on the petition must be personally known to the subscribing witness.

As previously stated, the affidavit of the subscribing witness is the equivalent of an acknowledgment and serves to substitute him for an official usually empowered to administer oaths or to take acknowledgments.

With respect to the validity of acknowledgments it has been held in this State, as well as in other jurisdictions, that where the statute requires the officer to certify that the person making the acknowledgment was to him personally known, it means a personal acquaintance with the signer (*Bidwell* v. *Sullivan*, 17 App. Div. 629, 630; see, also, cases cited in Skinner's Notaries' Manual [2d ed.], § 169, p. 186, and John's American Notaries [5th ed.], § 198); and it has been held that merely seeing the signature written does not constitute personal knowledge of the signer by the acknowledging officer (*Watson* v. *Campbell*, 28 Barb. 421, 423).

Election laws previously enacted (L. 1913, ch. 820, § 20; L. 1915, ch. 678, § 5-a) required of the acknowledging official attestation that each of the voters signing the designating petition and making oath was " personally known " to him and a similar provision appears in the present section 135 of the Election Law.

The other election acts did not prescribe, as does the present one, that the petition also may be authenticated by the affidavit of a subscribing witness. In permitting such an affidavit to take the place of an acknowledgment the Legislature imposed upon the witness a like obligation of declaring that the signers on the designating petition are personally known to him. This consistency and continuity of requirement in all such legislation indicates to my mind that it was the definite intention of the statute that the signers on the petition should be personally known to the acknowledging officer as well as to the subscribing witness.

In *Matter of McClosky* (21 Misc. 365) the objection was made that it did not appear that the persons who had signed and made the oaths were known to the notary; the court held the point untenable but only because the statute in force at that time did not contain such a requirement. In the present law there is such a statutory imposition.

This requirement that each of the signers shall be personally known to the acknowledging official or subscribing witness is

intended as a protection against election frauds: to hold some one legally accountable for the authenticity of the signatures, and hence it is that the law requires that the signers on the petition shall swear to the facts therein set forth and that the acknowledging officer or subscribing witness certify or make oath, respectively, that the signers are personally known to him. It is intended as a deterrent against the promiscuous procurement of signers, and by virtue of the punishment flowing from the commission of any acts of fraud, to make each of them proceed and act with circumspection and in good faith.

That the subscribing witness must " know " the persons who signed the petition was held in *Matter of Evans* v. *Cohen* (264 App. Div. 948) and while the question whether the word " know " in section 135 means " personally known " was not there specifically passed on, it is my view that for the reasons stated it has that significance; that by " know " the Legislature intended and meant " personally known ".

No logical reason manifests itself why the Legislature should demand of the acknowledging officer personal acquaintance with each signer and not require it of the subscribing witness, functioning in a like capacity, the object of the Legislature in imposing this requirement being the same in both instances.

Accordingly, the names of the signers not personally known to the subscribing witness Clasner cannot be counted, and without their inclusion in the count the respondent has not qualified as a candidate for nomination for the mentioned office.

The application is therefore granted. Settle order on one day's notice.