In the Matter of RODERICK STEPHENS, JR., Petitioner, against WILLIAM J. HEFFERNAN et al., Constituting the Board of Elections of the City of New York, Respondents.

In the Matter of PASQUALE E. MELE, Petitioner, against WILLIAM J. HEFFERNAN et al., Constituting the Board of Elections of the City of New York, Respondents.

Supreme Court, Special Term, Bronx County, October 29, 1945.

*Abraham Wilson* for Roderick Stephens, Jr., petitioner.

*Samuel J. Joseph* for Pasquale E. Mele, petitioner.

*Ignatius M. Wilkinson, Corporation Counsel (Thomas W. A. Crowe* of counsel), for respondents.

KOCH, J. These are consolidated proceedings brought under section 330 of the Election Law to test the validity of a nominating petition designating Roderick Stephens, Jr., as a candidate of the No Deal Party for the office of Borough President of the Borough of The Bronx. The petition contained 6,662 purported signatures. The statute, section 137 of the Election Law, requires that an independent nominating petition for this office shall have at least 5,000 valid signatures. It is conceded by counsel for Stephens that 1,190 of the 6,662 signatures aforesaid are invalid for patent invalidities.

Three issues are presented with respect to the remaining 5,472 signatures, to wit.: (a) Did the fact that less than 5,000 signatories to the petition registered in October, 1945, for the election to be held in November of that year invalidate the petition; (b) did the failure of the subscribing witnesses to the said petition to correctly state the respective election districts of their residences in accordance with the election district maps of 1944 invalidate 5,719 signatures on the several sheets of the petition where such an error appears; (c) did the subscribing witnesses "know" the signatories of the petition within the meaning of section 135 of the Election Law.

Subdivision 4 of section 137 of the Election Law provides in part as follows: "The name of a person signing such a petition for an election for which voters are required to be registered shall not be counted if such person, on one of the days of registration, in such year, is not registered as a qualified voter * * *." Uncontroverted proof was presented establishing that 3,198 signatories of the petition did not in fact register in 1945 during any of the registration days.

The statute is definite and clear as to the foregoing requirement, and as a result in the case at bar the deduction of these 3,198 signatures from the 5,472 remaining, in itself invalidates

the petition, as the then remaining signatures, 2,274, are far less than the minimum fixed by law. In view of this finding the remaining two issues become academic, but it has been urged that they are matters of public concern and for that reason they have received the consideration of the court in this memorandum. The failure of the subscribing witnesses to state correctly their respective election districts in their authenticating statements as provided by section 135, renders invalid the signatures on such sheets of the petition where such misstatements appeared. The election districts stated as those of the subscribing witnesses do not conform with the numbers of the districts as set forth in the election district maps of the year 1944, but correspond with those on the maps which became effective only as of October 1, 1945. In the case of *Matter of Hall* v. *Heffernan* (185 Misc. 742, 745, affd. 269 App. Div. 953) Mr. Justice RUBENSTEIN, at Special Term of the Supreme Court, Kings County, held as follows: " Nine hundred forty-nine signatures are questioned for the reason that the subscribing witnesses stated the election districts of their residences as the same are given on an official map prepared July 1, 1945. This map will not become effective until October 1, 1945 (Election Law, § 64, subd. 2). There is no proof before me that candidates were voted for in the election districts newly created on said map at the aforesaid primary, and hence I may not give effect to the exception enumerated in the foregoing provision. * * * Since such subscribing witnesses incorrectly stated their election districts, the signatures upon the sheets where such misstatements have been made may not be counted (*Matter of Dorsey* v. *Cohen,* 268 N. Y. 620; *Matter of Lieblich* v. *Cohen* [286 N. Y. 559], * * * *Matter of Bogarsky* v. *Cohen* [289 N. Y. 630] * * *)." The foregoing decision was affirmed without opinion by the Court of Appeals (295 N. Y. 599).

This defect in the case at bar invalidates 5,719 signatures on the nominating petition.

The third issue involved in this proceeding presents questions of fact depending upon the circumstances under which signatures have been procured in each instance. Prior to 1916 there was but one method of authenticating signatures to a designating petition for the nomination of candidates for public office in an election. This method was to have the signatories

appear personally before a public officer authorized to administer oaths, subscribe the petition in the presence of the said officer and have the said officer certify, among other things, that the person so signing was personally known to him. By chapter 537 of the Laws of 1916 the Legislature, evidently for the purpose of facilitating the procurement of signatures to such designating petitions, provided for an alternative method of authentication by a qualified witness who was required to certify under oath that the signers of such a petition signed the same in his presence, made the declarations therein provided and that he " knew " each of the persons who signed the same. (Election Law of 1909, § 48, now Election Law, § 135.)

While the courts recognize the necessity for facilitating the procurement of signatures, they nevertheless have insisted on strict compliance with the statute in order to prevent fraud and as a deterrent against inaccuracies which would result from promiscuous procurement of signatures. (*Matter of Whitman* v. *Cohen,* 174 Misc. 1087; *Matter of Phillips* [*Hubbard*], 284 N. Y. 152.) The Court of Appeals in affirming the Appellate Division of the Supreme Court, Second Department, in the case of *Matter of Evans* v. *Cohen* (289 N. Y. 629, affg. 264 App. Div. 948) held that the subscribing witness must " know " the person who signed the petition. In the recent case of *Matter of Kaplan* (*Greenman*) (185 Misc. 532), Mr. Justice EDER held that the statement of the subscribing witness was the equivalent of an acknowledgment and that such subscribing witness must " personally know " the signers whose signatures were witnessed by him. The Appellate Division of the Supreme Court, First Department (269 App. Div. 561, 562–563) in affirming the decision of the Special Term, held as follows: " Without attempting to define the extent, if any, to which the law requires the subscribing witness to have prior acquaintance with the signers of designating petitions, and assuming that such a witness may authenticate signatures where he has acted on information affording him reasonable knowledge as to the identity of the signers, we hold that the record in this case fails to establish that the subscribing witness Clasner had any such reasonable knowledge or information as to such identity. * * * While we hold that the order appealed from should be affirmed, in doing so we neither adopt the reasoning of the Special Term with respect to the requirement that the subscribing witness ' personally know ' the signer, nor do we intend to hold that an attempted self-identification by the signers in and of itself would be sufficient."

The Court of Appeals decided the case on October 5, 1945, and wrote as follows (294 N. Y. 584, 587): "The Appellate Division proceeded upon the assumption, without deciding, that a designating petition may be authenticated as to signatures by a subscribing witness who subscribes to the oath prescribed in section 135 of the Election Law, provided the witness has acted upon information affording him reasonable knowledge as to the identity of the signers. We are satisfied that the subscribing witness may lawfully act upon such information, but the finding of the Appellate Division that the witness in this case did not in fact have such information and knowledge is beyond our power to review."

It follows, therefore, that the issue is not whether " self-identification " is of itself sufficient information on which the subscribing witness may predicate the assertion that he " knows " the signer, but rather, in the exercise of reasonable judgment and circumspection the said witness is satisfied in his mind and conscience that the person whose signature he authenticates is in fact the person he represents himself to be. As was said in the case of *Shaw* v. *Railroad Co.* (101 U. S. 557, 566): " It may be fairly assumed that one who has reason to believe a fact exists, knows it exists. Certainly, if he be a reasonable being."

In the case of *Wood* v. *Bach* (54 Barb. 134, 143) the court held: " The means through which the officer obtains knowledge of the person's identity are not material. One officer might consider a person known to him through a method that another might entirely reject."

It would seem, therefore, that it is important for the court to determine in each instance as a question of fact whether the authenticating witness, in certifying that the persons signing the petition in his presence were actually such persons, acted on information secured by such means as should satisfy a reasonable person that the said information was worthy of belief. The witnesses in the case at bar undoubtedly in most instances, according to their testimony, did take such reasonable means in securing evidence of proof of the identity of the signers as satisfied them in making the authenticating statements. However, in some instances the witnesses conceded that the signatures were taken of persons whom they did not know, without the production of any proof of identity, and in fact they did not " know " such persons. In accepting those signatures it cannot be said that the subscribing witnesses complied with the provisions of the statute. No definite evidence has been

submitted as to the exact number of such instances. In fact in some instances the witness was unable to do better than describe general procedure as applied to an entire group of signatories. As the matter is now academic by reason of the decision herein on the other issues involved, the court will not attempt to determine the exact number of signatures invalidated by reason of the lack of knowledge of the subscribing witnesses of the identity of these signers of the petition. It therefore follows that the application of the petitioner, Roderick Stephens, Jr., be denied and that the application of the petitioner, Pasquale E. Mele, be granted, and the designating petition in behalf of Roderick Stephens, Jr., be declared invalid, and it is so ordered. Submit findings accordingly.