Nicholas M. Pette, J.
The petitioners instituted this proceeding for an order to (1) invalidate and declare null and void the independent nominating petitions of the respondents designating respondent William J. Cedzick, as candidate for the office of President of the Borough of Queens, designating respondent M. Michael Stern, as candidate for the office of District Attorney of Queens County, designating respondents James S. Smith, Benjamin Wright, Marco J. Griovanelli, Walter P. Standerman and Antoinette Griovanelli, as committee on vacancies, and *919 (2) enjoining and restraining the Board of Elections from printing on official ballots for the November 3, 1959 election, the said candidates.
It appears that the respondents, on or about September 28, 1959 caused to be filed in the office of the Board of Elections in the City of New York certain papers allegedly constituting an independent nominating petition of the United Taxpayers party, purporting to designate the respective respondents to the respective offices and respective committee on vacancies, as aforesaid, to be voted for at the November 3,1959 election, and containing 9,921 signatures to place their names on the independent ballot of the United Taxpayers party at said election where they seek to be elected to the aforesaid respective offices and committee on vacancies.
Objections to said petition were filed by- the petitioners on October 1,1959 and specifications of objections were filed by the petitioners on October 7, 1959, and on that day petitioners caused to be served on the respondents a duplicate copy of said specifications of objections.
After canvass by the Board of Elections 4,174 or about 42% of said 9,921 signatures were found to be invalid for various reasons, leaving 5,747 signatures which the Board of Elections has found valid. This proceeding brings up for review the validity of those 5,747 signatures which the Board of Elections found to be valid. Since the Board of Elections findings are presumptively correct, petitioners have the burden of proving the invalidity of said 5,747 signatures. Under the law 5,000 valid signatures are required.
Attacking the validity of the petition filed by the respondents, the petitioners allege that the petition does not conform to the provisions of the Election Law of the State of New York or to the rules promulgated by the respondent Board of Elections in that the same does not contain a sufficient number (5,000) of valid signatures; the authentication of the signatures are improper, invalid and, in many instances, false and fraudulently obtained; that there are alterations, interlineations, erasures and mutilations of signatures; that many of the signatories signed other petitions for other candidates for the same office ; many of the signatories voted in either the Republican, Democratic or Liberal party primary election held on September 15, 1959; many of the subscribing witnesses and signatories were not eligible to sign same because they were not qualified voters ; that many of said signatories improperly stated their residence and or Assembly or election districts; that there are many duplications of signatures on said petition; that many of the *920 signatures appearing on said petition are not genuine and are not signed by the individual whose name appears thereon; that many of the signatories were otherwise ineligible to sign said petition; that many of the signatures were obtained prior to the legal time to obtain the same; that many of the witnesses ’ statements were improperly executed in that the said subscribing witness did not obtain such signatures and did not know the persons who purportedly executed said petition; that said petition in many other respects does not comply with the Election Law and is improper, insufficient, defective and invalid as to form, substance and content; and that said candidates for Borough President and District Attorney, acting in concert with each and every subscribing witness on the alleged petition, participated in circulating said petition and in obtaining signatures thereon in a false and fraudulent fashion and misrepresenting said petition to the signatories thereon, and for other reasons many of the signatures are otherwise invalid as more particularly set forth in the specifications of objections filed. Petitioners .also charged that the purported candidate, M. Michael Stern, did not properly state his name on said petition and is otherwise not properly qualified to appear as a candidate for District Attorney. The respondents have interposed a general denial to the material allegations of the petitioners’ petition.
This court has conducted a protracted hearing in this matter commencing on October 16 and continuing on October 19, 20, 21 and 22. On October 19, 20 and 21 the hearing continued all day and after recess at 6:00 p.m., was resumed at 7:30 p.m., until about 11:30 p.m., on each of said days, and on October 22, 1959 the hearing was terminated at 1:30 p.m.
The court allowed a liberal latitude to both sides in the presentation of their proof, and witnesses' were examined and cross-examined at considerably great length, and counsel were afforded the opportunity to review their proof at length and they made prolonged oral argument in the nature of a summation in terminating the hearing. Motions were made by both sides at the end of the hearing to which reference is hereinafter made.
If designating petitions are to perform their lawful function it is essential that they be kept free from fraud in their making. It is to that end that the Legislature has made meticulous requirements with respect to them. The correct way to keep them free from fraud is to let it be known that any taint of fraud will wholly invalidate the petition.
The law seems settled that before a petition will be invalidated on the ground of fraud, it must appear that the persons *921 who signed the petition were induced to sign it by fraudulent representations, and that such fact must be established by the preponderance of the evidence at the hearing.
Persons who sign petitions must do so in the presence of the subscribing witness, who must know them. In this connection the statute requires the subscribing witness to swear: “ I know each of the voters whose names are subscribed to the above sheet of the foregoing petition * * * and each of them subscribed the same in my presence ’ ’. This in the eyes of the law gives sanctity and credence to the petition. It is technically and strictly construed. Any deviation, omission or mistaken allegation, however slight, from the statutory provision, will operate to invalidate the entire petition. (Matter of Dorsey v. Cohen, 268 N. Y. 620; Matter of Crosbie v. Cohen, 281 N. Y. 329; Matter of Lerner v. Cohen, 262 N. Y. 450; Matter of Loreto v. Cohen, 268 N. Y. 624.)
“ The principle of an honest authentication lies at the very foundation of our electoral process. Persons who sign petitions must do so in the presence of the subscribing witness. The failure to conform to this rule renders the petition invalid ” (Abrahams, New York Election Law, p. 139).
The Board of Elections cannot pass on questions of invalidity requiring the determination of issues of fact such as are ordinarily raised by claims of fraud or forgery. (Matter of Waters v. Cohen, 248 App. Div. 830.) The court may pass upon signatures claimed to be forged although they were not included in the specifications of objections. (Matter of Ackerman v. Cohen, N. Y. L. J., July 17,1944, p. 106, col. 1 [Froessel, J.]; see, also, Matter of Vona v. Cohen, 150 Misc. 649, affd. 240 App. Div. 827, affd. 262 N. Y. 706.)
Where many signatures appear clearly to be in the same handwriting, the issue must be determined from the original petition filed. (Matter of Goldbas, 43 N. Y. S. 2d 352.) The examination of the petition constitutes the best evidence upon the issue. (Matter of Gridley v. Cohen, N. Y. L. J., Sept. 13, 1938, p. 642, col. 1.) The courts have ruled that the trial court, although not a handwriting expert, in cases where similarity of the signatures were so glaring, may determine that such signatures are in the same handwriting. (Matter of Cavallaro v. Cohen, N. Y. L. J., July 19, 1944, p. 120, col. 1, affd. 268 App. Div. 833, affd. 293 N. Y. 741; see, also, Matter of Preiss, N. Y. L. J., Sept. 6, 1934, p. 649, col. 3; also Matter of Katzen v. Cohen, N. Y. L. J., Aug. 30, 1935, p. 609, col. 3; Matter of Shapiro, N. Y. L. J., Mar. 20, 1936, p. 1422, col. 8.)
*922 The evidence adduced before this court convincingly sustains the petitioners’ claim that a great many of the sheets comprising the respondents’ petition are permeated with irregularities, and upon the record before me I find, that in numerous instances the subscribing witnesses did not know the persons whose signatures they attested to within the meaning of the statute, and in other instances did not sign in the presence of the subscribing witness. A most liberal construction of section 135 of the Election Law cannot pardon any misrepresentations and irregularities such as are clearly manifested by the record before this court.
In the ease at bar thousands of signatures were involved, so that there was insufficient time for every signer to be interrogated by those opposing the candidates to ascertain if each had actually signed the petition in compliance with the statute or even to interview every subscribing witness. In such circumstance, as a practicable matter the court may weigh the credibility of the subscribing witnesses who were directly attacked as to all of their alleged signers, and may well apply the principle of falsus in uno falsus in omnibus as was done in Matter of Burns (Sullivan) (199 Misc. 1005, affd. 278 App. Div. 1023, affd. 303 N. Y. 601).
This court feels that nothing should be done to discourage the circulation of independent petitions. But it must be done legally.
The evidence shows that the candidate for Borough President as well as the candidate for District Attorney on this independent petition both were subscribing witnesses, the former obtaining some 767 signatures on 42 sheets, and who testified that on one day, September 5,1959, he obtained 193 signatures and that he only knew 3 of said signatories, and also testified that on September 19,1959 he obtained 56 signatures and did not know any of the signers. The other candidate admitted that he obtained a total of 773 signatures on some 55 pages of the petition on which he was the subscribing witness.
Petitioners produced a handwriting expert who testified to the similarity of signatures on a number of sheets of the petition, which signatures he stated in his opinion were in the same handwriting. The court examined those signatures and also examined the signatures on some 51 other sheets of the petition and found such glaring similarity of signatures on each of said sheets to convince the court that they were in the respective instances in the same handwriting. In this connection the court observed that the same person signed either twice or three times *923 on the same page, and this was not limited to any one particular area, as the court found.
The court finds that the most flagrant violations of the statute and irregularities occurred in an area which was charged with considerable agitation and where people had become demonstratively emotional as to the transportation of children from Brooklyn to Queens schools, and the signers’ minds were concentrated on said transportation of children which so concerned them and they were not interested in signing designating petitions for candidates of any party. This area was the nerve center of agitation and signers were misled into signing what they were led to believe was a protest against the bussing of children from Brooklyn to Queens schools. To create this misapprehension a large sign mounted upon the top of an automobile used by one of the candidates who was also the subscribing witness bore the legend: “ Preserve your Neighborhood Schools ”. None of these signers were told that they were signing a designating petition for candidates of any political party and those who testified stated that they did not know the person before whom they signed, were not asked if they were registered voters or to identify themselves to the subscribing witness whom they had never seen before.
The evidence discloses that signatures to the petition were obtained in bars, bowling alleys, barber shops, places of business, meeting halls, club rooms, in front of public schools where Ridgewood and Glendale residents were picketing against said transportation of school children in buses from Brooklyn to Queens, in front of food markets where a table and chair were set up and people were solicited to sign and were misled by the belief they were signing a protest against said bussing of school children, as aforesaid, and in the public street. In some instances signers were told that they were signing a petition against the transferring of school children from Brooklyn to Queens schools. The testimony disclosed that one witness could not see the top of the petition sheet she signed because the sheet on top was so folded as to prevent her from seeing the title of the sheet. The testimony also showed that the candidate who was subscribing witness to the aforesaid 42 sheets of the petition was not seated at the table where the sheets of the petition were signed, but was some 12 to 15 feet from said table where his wife was seated while he solicited prospective signers. The testimony also revealed that in some instances signatories were told that the petition was one to lower taxes, or was a petition for a two-year residence law. All witnesses who testified stated *924 that they would not have signed had they known the real purpose of the petition and were misled into signing the same.
One witness testified that on seven sheets on which he is the subscribing witness he did not know any of the signatories on five of such sheets and that he obtained the signatures on the corner of Myrtle and Catalpa Avenues on a Saturday and that he requested no information as to the identity of the signers, whom he testified he had never seen before, and that after the petitions were signed some of them were shoved under the door of the United Taxpayers party headquarters with no date having been filled in next to the signatures.
In very many instances, too numerous and unnecessary to here set forth, and particularly the signatures taken in the Ridgewood-Grlendale area, the petition is so permeated with unmistakable evidence of misrepresentation and other irregularities violating the applicable provisions of the Election Law as to require the invalidating of the entire petition. The pattern of such violations is so definite and clear that to condone the same would be a mockery of the Election Law.
Upon all the evidence adduced before this court there emerges such a clear pattern of misrepresentation in the obtaining of the signatures to respondents ’ independent nominating petition, from which it is convincingly established that the petition fails to conform to the mandates of the statute which has unmistakenly been flagrantly flouted. The court therefore, in the public interest, must invalidate the respondents’ petition in toto. (Matter of Weisberger v. Cohen, 22 N. Y. S. 2d 1011, affd. 260 App. Div. 392; Matter of Bloom v. Power, 21 Misc 2d 885 and cases cited; see, also, Matter of Kaplan [Greenman], 185 Misc. 532; Matter of Stephens v. Heffernan, 186 Misc. 275, 279.)
Respondents’ motion to strike out paragraph 15 of the petitioners’ petition and so much of paragraph 14 which alleges: “ many of the signatories voted in either the Republican, Democratic or Liberal Primary Election held on September 15,1959 ” is granted. All other motions on behalf of the respondents as to which the court reserved decision are denied. Petitioners’ motion to declare null and void and invalid the respondents’ independent nominating petition and to enjoin and restrain the Board of Elections from printing and, or placing upon the official voting machines at the general election to be held on November 3, 1959, in and for the County of Queens, City and State of New York, is granted.