In the Matter of the Application of ERNEST C. SPOSATO, Petitioner.
RONALD GRAHAM et al., Respondents.*
Supreme Court, Onondaga County, July 31, 1943.

---

* See, also, *Matter of Sposato (Graham)*, 180 Misc. 940.— [REP.

*Irving H. Lessen* for petitioner.

*Walter Soule* for Ronald Graham, respondent.

*Truman Preston, County Attorney (Charles Major* of counsel), for John Bachman and another, constituting the Board of Elections for the County of Onondaga, respondents.

SEARL, J. This is a return of an order to show cause why the Board of Elections of Onondaga County should not be directed to disregard and remove the designating petition of Ronald Graham, as a candidate for the nomination by the American Labor Party for the position of District Attorney of the County of Onondaga, to be voted upon at the primary election to be held August 10, 1943.

The petitioner is a candidate seeking nomination in the Democratic primaries.

The ground alleged in the petition as the basis for the relief asked is that Ronald Graham is a reporter employed by a local newspaper and ineligible to hold the office of District Attorney, as he is not a duly licensed attorney of the State of New York.

Respondent Graham admits in his answer that he is not a duly licensed attorney, but, notwithstanding this fact, urges his eligibility for nomination.

The first objection raised in his answer is that the petitioner, Ernest G. Sposato, has failed to comply with the statutory requirement contained in section 142 of the Election Law, which provides: " A written objection to any petition or certificate of designation or nomination may be filed with the officer or board with whom the original petition or certificate is filed within three days after the filing of the petition or certificate to which objection is made * . * * ."

Respondent Graham claims that it does not appear that petitioner or any one in his behalf filed written objections to respondent's nomination within three days of the date of filing.

Petitioner maintains that the provisions of section 142 refer to objections made by a voter other than a candidate and refers to the wording of section 330 of the Election Law wherein subdivision 1 provides: " 1. The designation of any candidate or independent nomination, in a proceeding instituted by any candidate aggrieved or by a person who shall have filed objections pursuant to section one hundred and forty-two, but a proceeding under this subdivision must be instituted within fourteen days after the last day to file petitions."

This court must find against respondent as to this objection upon the authority of the opinion of Justice COHN in *Matter of Vona v. Cohen* (150 Misc. 649), in which it was held that the Supreme Court, regardless of whether objections were registered within three days of the date of filing, " is vested with summary jurisdiction to determine any questions of law or fact irrespective of whether such que*,/ions had previously been raised at the hearings before the board of elections." This decision has been affirmed without opinion in 240 Appellate Division 827, and in 262 New York 706.

An affidavit is filed by respondent Graham, sworn to on the 23rd day of July, 1943, challenging the authority of this court to act, stating " that only the people (all the citizens of the United States) have the power to decide by their voice whether they shall consent to the abridgement of this ' privilege ' to seek public office."

This objection of respondent, so far as the authority or jurisdiction of this court is concerned, must be decided adversely to respondent, as section 330 of the Election Law answers this objection wherein it provides: " § 330. Summary jurisdiction. The supreme court is vested with jurisdiction to summarily determine any question of law or fact arising as to any of the subjects set forth in this section, which shall be construed liber-

ally. Such proceedings may be instituted as a matter of right and the supreme court *shall make such order as justice may require.*" (Italics inserted.)

No authorities directly in point have been reported in the State of New York.

Section 5 of article IX of the Constitution of the State of New York prescribes that district attorneys, among others, shall be chosen by the electors of the respective counties once in every three years. Section 7 of article XIII thereof provides that the time for electing district attorneys shall be prescribed by law. It is a public office created by the Constitution, and in that respect, at least, differs from that of Judge of Traffic Court of the City of Syracuse, now before this court on another proceeding (*Matter of O'Connor* [*Babcock*], 180 Misc. 630).

Respondent Graham very properly argues that as a citizen of the United States and of the State of New York he is entitled to all rights and privileges guaranteed to citizens of the nation and State by the Federal and State Constitutions. The facts, as shown by his affidavit, that he has never been arrested, is married and has three children, is a graduate of a vocational high school, that his father and grandfather studied law, that in addition to his duties as reporter he works two days a week at a pottery, that his ancestors fought in the Revolution, all bespeak of his good character, his industrious habits, and his background. He urges that as he is qualified as to age to become a candidate for President of the United States, he is likewise qualified to become a candidate for the office of District Attorney. He would here be eligible for nomination if he were an attorney of the State of New York. The name itself describes its attributes and denotes the qualifications for the office. As urged by the People in the case of the *People ex rel. Hughes* v. *May* (3 Mich. 598) as far back as the year 1855, when this same question arose, " The word attorney is sometimes used to convey the idea of an unprofessional agent appointed to act as the representative of another, but more frequently as applicable to an attorney at law retained to prosecute and defend for his client. In the latter sense, he is always considered as an officer of a court. * * * Webster defines an attorney to be either public or private. The former is an attorney at law, an officer of a court of law, legally qualified to prosecute and defend actions, whom any client can select to prosecute for or defend him in any court * * *."

Then follows the practical reason why the candidate for this particular office must and should be an attorney at law. Sub-

division 4 of section 200 of our County Law provides: "It shall be the duty of every district attorney to conduct all prosecutions for crimes and offenses cognizable by the courts of the county for which he shall have been elected or appointed * * *."

Section 263 of our Code of Criminal Procedure provides: "Whenever required by the grand jury, it shall be the duty of the district attorney of the county to attend them for the purpose of examining witnesses in their presence, or of giving them advice upon any legal matter, * * *."

As to the further duties of the district attorney, subdivision 3 of section 201 of the County Law requires that he render to the County Court a report of all actions brought by him for penalties or forfeitures.

Having examined generally the duties of the district attorney as relevant to his qualifications and as to whether a layman could adequately perform the duties, we are confronted squarely with the provisions of section 271 of our Penal Law, "None but attorneys to practice in the state", which provides: "No natural person shall ask or receive, directly or indirectly, compensation for appearing for a person other than himself as attorney in any court or before any magistrate, or for preparing deeds, mortgages, assignments, discharges, leases or any other instruments affecting real estate, wills, codicils, or any other instrument affecting the disposition of property after death, or decedents' estates, or pleadings of any kind in any action brought before any court of record in this state, or make it a business to practice for another as an attorney in any court or before any magistrate unless he has been regularly admitted to practice, as an attorney or counselor, in the courts of record of the state; * * *."

The preceding section, namely 270 of the Penal Law, states: "It shall be unlawful for any natural person to practice or appear as an attorney-at-law or as attorney and counselor-at-law for a person other than himself in a court of record in this state or in any court in the city of New York, or to furnish attorneys or counsel or an attorney and counsel to render legal services, or to hold himself out to the public as being entitled to practice law as aforesaid, or in any other manner, or to assume to be an attorney or counselor-at-law, or to assume, use, or advertise the title of lawyer, or attorney and counselor-at-law, or attorney-at-law or counselor-at-law, or attorney, or counselor, or attorney and counselor, or equivalent terms in any language, in such manner as to convey the impression that

he is a legal practitioner of law or in any manner to advertise that he either alone or together with any other persons or person has, owns, conducts or maintains a law office or law and collection office, or office of any kind for the practice of law, without having first been duly and regularly licensed and admitted to practice law in the courts of record of this state, and without having taken the constitutional oath * * *."

Thus, in event respondent Graham were elected District Attorney, he could not legally appear in his own name as District Attorney, nor in behalf of the County, to bring actions in the various courts to obtain moneys to which the County might be entitled, as penalties, and he clearly would not be qualified to give the grand jury "advice upon any legal matters" as required by the Criminal Code.

From a practical standpoint, to say nothing of the legal standpoint, to select a man from the usual walks of life, no matter how well versed he might be in business, in a county of some 300,000 inhabitants, and ask him without technical legal training to handle the myriads of complicated technical legal problems that arise, would be a grave injustice not only to the incumbent of the office but more particularly to the community he was attempting to serve.

Nor can it be well argued that such a conclusion is indicative of bias in behalf of the lawyer. The State of New York, for the protection of litigants generally, as well as the public, has established extremely high standards by way of years of legal training in recognized colleges and comprehensive bar examinations. One might as well argue that a layman, without special training, could function as head surgeon in a large hospital and successfully perform difficult operations.

Throwing aside, however, all practical consideration, and facing this question from the strictly legalistic side, although the only requirement contained in section 144 of the Election Law is to the effect that a person must be a citizen of New York State to be nominated for public office, this court must hold that there is implicit in the whole body of our statute law, and in the reference to the title of the office in the Constitution of the State, the requirement that a district attorney be a duly admitted attorney.

Respondent urges that in any event the question of ineligibility cannot be raised at this time, as he is only a candidate at a primary election and as yet has neither been nominated nor elected. The answer is found in *People* v. *Purdy* (154 N. Y. 439), holding that disqualification to exercise the power and

perform the duties of an office renders ineligible a candidate. Also, in *Matter of Lindgren* (232 N. Y. 59) the court held that a person to be nominated for public office must be one who, at the time of his election, can take and hold such office.

Indirectly the courts of this State have found as this court is compelled to find in the instant proceeding. In *Scott* v. *Village of Saratoga Springs* (131 App. Div. 347, affd. 199 N. Y. 178) the Legislature had provided that the commissioners of highways of the village of Saratoga Springs should be taxpayers of the village. The court held the act constitutional; that although the Legislature may not arbitrarily establish exclusion from office, it may prescribe proper rules and regulations to insure that an officer is reasonably qualified to perform the duties of his position. In the instant case an *attorney* is to be elected. The law provides that only a *duly admitted attorney* can act in a court of record. Such a requirement surely is not arbitrary. Indictments are found in Supreme Court and remitted for trial in County Court, both courts of record, where the bulk of the work of the district attorney takes place.

The same principle has been supported in *People ex rel. Devery* v. *Coler* (173 N. Y. 103, 118); *People* v. *Platt* (117 N. Y. 159); *Rogers* v. *Common Council of Buffalo* (123 N. Y. 173); and *Matter of Becraft* v. *Strobel* (158 Misc. 844).

Throop on Public Officers, section 73, states: "Thus it is believed that there can be no valid constitutional objection to the statutes, which are now very common, prescribing special qualifications for particular offices, as that the person filling the same shall be a lawyer, a physician, an architect, or otherwise skilled in the particular duties devolved upon him by the office." (Citing *People ex rel. Hughes* v. *May,* 3 Mich. 598, above referred to.)

It may be argued that until recently there has been no resident attorney acting as district attorney in Hamilton County and that a layman has been there elected to fill that office. Although the Legislature has provided that a lay district attorney may at the expense of Hamilton County engage the services of an attorney in an adjoining county, this fact cannot be regarded as an approval of the eligibility of a layman to hold the office generally throughout the State. In many counties there are no assistant district attorneys. In such instances, were a layman to be elected there would be no one to prosecute indictments in behalf of the people. It is not difficult to contemplate what a haven such a county would be for the professional criminal.

In many cases, even now, with astute prosecuting attorneys, having a knowledge of the rules of evidence and with practical experience, it is often difficult to obtain convictions where the facts justify. As a last analysis, it seems much more in keeping with orderly procedure that legislation be enacted to permit, if necessary, the choice of a layman in Hamilton County, than to subject the remaining counties of the State to prosecution of crime by the inexperienced.

The petitioner is entitled to the relief demanded in the petition — order accordingly.