In the Matter of FRANK A. PAVIS, Petitioner, against WILLIAM J. HEFFERNAN et al., Constituting the Board of Elections of the City of New York, et al., Respondents.

Supreme Court, Special Term, Kings County, September 15, 1945.

*Angelo Constantino* for petitioner.

*Allen Goodwin* for Nikki Lauer, respondent.

COLDEN, J. Application to declare valid the nominating petition filed by the petitioner designating him as a candidate for the office of City Councilman of the City of New York from the Borough of Richmond, to be voted for in the forthcoming general election, and to direct the Board of Elections to place his name on the official councilmanic ballots. Said designating petition was declared invalid by the Board of Elections upon a hearing on objections duly filed, and it is the determination thus made which is sought here to be reviewed.

Subdivision b of section 1004 of the New York City Charter (1938) provides that nominations for councilman for any borough of the city of New York " shall be signed by not fewer than two thousand electors who have registered as voters of

such borough within eighteen months previous to the filing of the petition.'' Petitioner's nominating petition contains 2,326 signatures. There were 921 objections specified, of which 716 were passed upon and upheld by the Board of Elections, thereby reducing the petition to fewer than the required 2,000 signatures.

The hearing before this court was confined to a review of signatures found invalid by the Board of Elections as to which objections had been duly registered with said board. Objections not previously raised were likewise made, but consideration thereof was held in abeyance pending a ruling by this court as to its jurisdiction to consider such objections irrespective of whether they had been previously raised before the Board of Elections. The ruling of the court, in view of the authorities, must be that such objections may be considered (*Matter of Vona* v. *Cohen*, 150 Misc. 649, affd. 240 App. Div. 827, affd. 262 N. Y. 706; see, also, *Matter of O'Connor* [*Babcock*], 180 Misc. 630, 632; *Matter of Sposato* [*Graham*], 180 Misc. 933, 935). The court has also not considered or passed upon the objections which were specified before the Board of Elections but not passed upon by it. The petitioner conceded the invalidity of a total of 125 signatures in the categories embraced in the hearing before the court, thus reducing the number of claimed valid signatures in the petition to 2,201.

The first category of objections presented for review involved 235 signatures, which the Board of Elections invalidated because they were obtained before July 29, 1945, which is concededly more than 100 days prior to this year's general election. Of these 107 signatures have been objected to for additional reasons not yet presented for review. Subdivision f of section 1004 of the New York City Charter specifically provides '' A signature made earlier than one hundred days before the election shall not be counted.'' Petitioner claims, however, that section 314 of the Election Law (L. 1945, ch. 350), which was passed to make war ballots available to servicemen and women for this year's general election, suspended the foregoing 100-day provision of the charter. The difficulty with this contention is, however, that there is nothing in section 314 of the Election Law which permits the counting of signatures obtained more than 100 days before the election.

It is difficult to perceive upon what basis the court can supply the omission and state that a signature obtained X days in excess of 100 may be counted, notwithstanding the clear and unequivocal language to the contrary in the section of the charter above cited. To do so would place the court in the

position of legislating, a function with which it is not clothed. It follows, therefore, that the 235 signatures in this category cannot be counted.

The next three categories may be considered together. In these, forty-seven signatures are claimed to be invalid because these voters registered for the 1944 election from districts other than those stated in the petition, twenty are claimed to be invalid because the voters omitted furnishing the election districts from which they had registered the previous year, and forty-six had omitted to furnish the addresses from which they had registered that year.

Subdivision a of section 1004 of the New York City Charter provides that all nominations for City Councilman " shall be by nominating petitions in accordance with the provisions of the election law for independent nominations so far as applicable except as herein otherwise provided." So far as pertinent here, section 137 of the Election Law requires the petition for independent nominations to contain the following:

| "Date | Name of signer | Residence ward | Election district | Town or city | Assembly district |
|-------|----------------|----------------|-------------------|--------------|-------------------|
| ..... | ........ | ............. | ....... | ........ | .......'' |

It is to be observed that the *additional* qualification prescribed by subdivision b of section 1004 of the City Charter to the effect that councilmanic nominating petitions for any borough shall be signed by electors " *who have registered as voters of such borough within eighteen months previous to the filing of the petition* " (italics supplied), is not provided for in the form of petition prescribed by the Election Law. The form of printed nominating petition here used, however, follows that prescribed by section 137 of the Election Law, and contains the following additional columns:

| " Address From Which I Registered Within 18 Months Previous To the Filing of This Petition | Richmond N. Y. City Richmond County | |
|---|---|---|
| | Election District | Assembly District |
| Borough of Richmond New York City | | '' |

It is the errors and omissions in respect to the information required by these three columns that were the grounds for invalidating the signatures embraced in the three categories under consideration.

The difficulty here is due largely to the fact that the City Charter, while giving the qualifications of electors who might

sign a nominating petition for the office of councilman for any borough, failed to prescribe ·the petition which would reflect such qualifications, except by reference to the Election Law, which was intended to fit the qualifications peculiar to independent nominations only and was not amended to embrace the additional qualifications required in a councilmanic nominating petition. The address, election and assembly districts from which the elector registered within eighteen months previous to the filing of the petition was obviously inserted in the nominating petition here involved to meet the *additional* requirements of the charter, in respect to which section 137 of the Election Law is silent.

However, the sufficiency of a petition was upheld where, in addition to the information required by section 137 of the Election Law, the nominating petition for councilman of a borough contained also '' a statement that the signers were duly qualified voters who had registered to vote in the [particular borough], city of New York, within eighteen months previous to the filing of the petition.'' (*Matter of Carroll* v. *Cohen,* 262 App. Div. 481, 482). Such is the situation here. In addition to furnishing the information required by the petition prescribed by section 137 of the Election Law, the printed declaration on each sheet states in part that the signer was '' registered as a voter of such Borough of Richmond, City of New York, within eighteen months previous to the time this petition is filed * * *.'' The furnishing, in addition to the foregoing statement, of the address, election and assembly districts of the signers from which they registered within eighteen months previous to the filing of the petition ·is not specifically required by any statute, although such information is convenient for the purpose of facilitating the checking of the qualifications of the signers under 'the provisions of the charter already referred to. There being no statutory requirement for such specific information, it cannot be said that it is mandatory so as to require the invalidation of a signature where such information is either incomplete, incorrect or altogether omitted.

It was stated in *Matter of Goldberg* v. *Cohen* (257 App. Div. 675, 677, affd. 281 N. Y. 776) : '' The sole requirement being that of registration within eighteen months, it would be permissible for a person to sign who had registered at some place other than his residence as given on the petition. The opportunity· to check the fact of registration within the short time elapsing between the filing of petitions and the election, would seem to make it essential that at least there be *some statement*

*in the petition that the registration took place in the borough where the nomination was being made.* This is the requirement of the charter, and compliance therewith would seem mandatory.

"As we read the Charter in connection with the Election Law, it would seem that the registration in the ensuing year, as required in section 137 of the Election Law, is not an essential in the case of those signing petitions for councilmen. It is enough that the signers ' register within 18 months prior to the filing of this petition.' " (Italics supplied.)

It follows that the 113 signatures embraced in these three categories are valid and should have been counted.

In the next category are fifty-three signatures with initials. These must be held invalid in light of *Matter of Nunley* v. *Cohen* (258 App. Div. 746); and the affidavits admitted in evidence cannot serve to correct the petition where, as here, the time to do so has expired.

In the next category are six signatures written in lead pencil. These are invalid. (*Matter of Marion,* 174 Misc. 897; Abrahams' New York Election Law Manual with Forms [1939 ed.], p. 68; Abrahams' Digest of Election Law Decisions [1944 ed.], p. 41).

In the next category are nineteen signatures on an unnumbered page. The first 140 pages of the nominating petition appear to have been consecutively numbered by a numbering machine. Pages 141 to 143 were numbered with pen and ink. The unnumbered page was found between pages 87 and 88 of the petition. The Board of Elections properly refused to count the nineteen signatures thereon. Section 137 of the Election Law provides that the pages of a petition " shall be numbered consecutively, beginning with number one, at the foot of each page ". (*Matter of Eul* v. *Kania,* 278 N. Y. 695; *Matter of Simpson* v. *Cohen,* 252 App. Div. 275.) The insertion of an unnumbered sheet did not invalidate the entire petition in the absence of fraud or other wrongful conduct.

In the last category presented at the hearing are 163 signatures, in which the subscribing witnesses furnished incorrect election districts. The Court of Appeals has recently upheld a lower court ruling rejecting as invalid " sheets wherein the subscribing witnesses incorrectly stated their election districts." (*Matter of Boyarsky* v. *Cohen,* 289 N. Y. 630; see, also, *Matter of McElroy* v. *Cohen,* 286 N. Y. 686; *Matter of Lieblich* v. *Cohen,* 286 N. Y. 559; *Matter of Crosbie* v. *Cohen,* 281 N. Y. 329; Abrahams' Digest of Election Law Decisions [1944 ed.], p. 30). Accordingly the 163 signatures here involved are invalid and cannot be counted.

To recapitulate: Total number of signatures reviewed by the court, 714, of which 125 were conceded to be invalid by the petitioner, 476 were found invalid by the court and 113 were found valid by the court. Total number found invalid, 601, which subtracted from the total of 2,326 signatures in the petition, reduces it to fewer than the 2,000 required by the charter. It follows that the application must be denied. Submit order.