In the Matter of JOHN J. BURNS, Petitioner. CHARLES P. SULLIVAN et al., Respondents.

Supreme Court, Special Term, Queens County, August 15, 1951.

*Joseph M. Lonergan, Denis Hurley, Milton Mollen, John W. Williams* and *J. Wolfe Chassen* for petitioner.

*John P. McGrath, Corporation Counsel* (*Victor Hurwitz* of counsel), for Board of Elections of City of New York, respondent.

*Joseph A. Solovei* for Charles P. Sullivan, respondent.

HILL, J. The Honorable Charles P. Sullivan caused to be filed with the board of elections of the city of New York a designating petition containing 6,323 signatures, thereby placing his name on the Democratic primary ballot wherein he seeks to be one of the two candidates of that party for the office of County Judge of Queens County to be voted on in the coming November

election. After canvass by the board of elections, 2,204 of the signatures on the designating petition were found to be invalid for various reasons, leaving 4,119 valid signatures on the petition. The Election Law requires 2,500 valid signatures in order for a name to appear on the primary ballot to be voted on in the primary election.

This proceeding brings up for review the validity of the 4,119 signatures which the board of elections has found to be valid.

Four hundred and twenty witnesses testified for the petitioner. The respondent called none. The petitioner has the burden of proof in this proceeding — the findings of the board of elections are presumptively correct.

The petition filed contains 855 numbered sheets comprising the designating petition. Testimony was offered that one or more of the names on the designating petition were invalid on 256 of those sheets. Summarized, the testimony is that some of the signators were obtained by young children, not in the presence of the subscribing witness; others that the subscribing witness was not present when the signature was obtained; some, the subscribing witness did not appear before a notary public; some, that the signatures were obtained in public places in the absence of the subscribing witness, and others that the subscribing witness or his name was not known to the signor.

It is the contention of the petitioner that the designating petition is invalid in its entirety for the reason that there was no attempt made by the Sullivan organization to comply with the Election Law and particularly section 135 thereof, which requires that the signatures on the designating petition be authenticated by the subscribing witness, that the subscribing witness must know each of the voters whose names are subscribed to the sheet and each must subscribe the same in the presence of the subscribing witness. The subscribing witness must then swear to the same before an officer entitled to administer oaths.

The petitioner further claims that where it is found that a subscribing witness swore falsely to one petition, all of the petitions signed by the same subscribing witness should be declared invalid.

It is the contention of the respondent that only those names which are found to be invalid should be struck from the petition, not the whole sheet, or, in any event, not those sheets on which there is no testimony.

The court finds from the uncontradicted testimony that 256 sheets containing 1,310 names are invalid. This is not enough to invalidate the entire petition. The question then presents itself: Should all of the sheets signed by the subscribing witness where the court finds irregularity and false swearing to other sheets of the subscribing witness be declared to be invalid?

While the Election Law should be liberally construed, such liberalization should not reach the point of emasculation; otherwise the Election Law would be a sham.

The Supreme Court has broad powers to correct irregularities in primary petitions. A fair and honest petition should be of the utmost importance; but one that is permeated with fraud and mistake should be condemned. Where, as here, 420 witnesses testified to petitions involving 256 sheets out of 855 and directly affecting 1,310, the court is entitled to some explanation from the person or persons charged with the fraud. As an example, an employee of Mr. Sullivan's office, called by the petitioner, testified concerning his wife, a subscribing witness, who signed a number of petitions as such without knowing some of the persons who signed as signators. These are some of the questions and answers from that witness: '' Q. Where is your wife, now, Mr.  *  *  *? A. Well, my wife has been away for — from the house about two, two and a half weeks. Two, two and a half weeks; I am not positive about the half. Two weeks. Q. Away from the house, you say? A. Yes, sir. Q. Where is she? A. I believe that she went to Wantagh to visit her grandmother, and after that she went to Connecticut. That's where, I believe, she is staying now. The Court: Do you know? Do you know where your wife is now? The Witness: She is in — I believe she is in Connecticut. The Court: Well, do you know? The Witness: I don't know exactly where — I couldn't swear where she is right now, but I believe she is in Connecticut. Q. You cannot give me any exact location, sir? A. I couldn't, because perhaps she may be on her way down.''

Of the five subscribing witnesses who did appear, one testified that she signed sheets containing 109 signatures, some of which she obtained, others not and unknown to her. She also testified that she did not appear before a notary public to subscribe to her signature; another that she did not appear before a notary public; another that she sent her minor son to get the signatures which she did not witness; another, who subscribed to three sheets, that he got all but six names and that he never appeared before a notary public; and another who had little recollection of the manner in which he obtained the signatures, but, in any

event, did not obtain all as prescribed by law. It is very significant that the secretary to one of the respondent's associate counsel signed twenty-eight sheets as a subscribing witness and although repeatedly mentioned as a subscribing witness who signed illegally was not called and the only explanation was — " She is on vacation."

We have here a designating petition where the election board in the first instance rejected more than one third of the names on the designating petition as invalid for various reasons, a figure the respondent does not dispute, and an additional 1,310 have been found to be invalid on this trial by direct testimony. There comes a time when the respondent should be called upon to come forward with proof of the legality of the remaining petitions. The court finds this time has arrived.

In the absence of any testimony, I find that all of the designating petitions signed by the subscribing witnesses directly attacked, amounting to an additional 311 sheets, containing an additional 1,489 signatures, are also invalid. This computation of 2,799 signatures found to be invalid, leaves a balance of 1,320 valid signatures, far short of the required number to place Mr. Sullivan's name on the Democratic primary ballot.

The court does not find that Mr. Sullivan had knowledge of the irregularity of the designating petitions, but by the same token he cannot profit thereby.

Counsel for Mr. Sullivan suggests that petitions filed for other candidates of Queens County were procured in the same manner as here. It may well be that under those circumstances Mr. Sullivan's duty as District Attorney of Queens County is clearly indicated.

It follows that the petition is granted and that the designating petition of Mr. Sullivan is invalid.

(Listing of petitions by numbers omitted.)