James D. Hopkins, J.
This proceeding under subdivision 1 of section 330 of the Election Law has been brought by the petitioner, the candidate of the Democratic party for the office of Supervisor of the second ward of the City of New Rochelle, for an order determining that the petition nominating the respondent Salvatore La Pera as the candidate of the Minuteman Action party for the same office is insufficient, invalid and illegal. Evidence on the issues was received from the petitioner and the respondent La Pera on October 5, 6 and 9.
The petition under challenge consists of 54 sheets, containing 568 signatures. In order to designate a candidate for the office of Supervisor in the second ward of the City of New Rochelle, 273 signatures are required. The respondent Board of Elections sustained petitioner’s objections to 139 signatures, thus leaving 429 signatures, more than sufficient to support the nomination of the respondent La Pera.
*54 The petitioner urges that the nominating petition is invalid and illegal for the reasons that (1) the respondent Board of Elections was powerless to pass on 33 signatures, in which abbreviations, initials, or titles were used in the signature other than appears on the registration card of the voter; (2) 6 signatures are invalid, because the subscribing witness did not see the person sign his name; (3) 15 persons who signed the petitioner’s petition also signed the La Pera petition; (4) some 45 signatures were not genuine; and (5) the petition is permeated with fraud and deception.
As the action of the respondent Board of Elections is presumptively correct, the burden of proof rests on the petitioner to establish his claims (Matter of Burns, 199 Misc. 1005, affd. 278 App. Div. 1023, affd. 303 N. Y. 601; Matter of Bloom v. Power, 21 Misc 2d 885, affd. 9 A D 2d 626). Each of the contentions are considered in its order.
1. The 33 signatures attacked by the petitioner are those in which the signatory used initials or abbreviations; in 3 of the signatures the signatory, a married woman, used her husband’s name, as “ Mrs. John Frisenda ”. The Deputy Commissioner of the Board of Elections testified that each signature had been identified by reference to the register of voters, following the authority conferred by section 138-a of the Election Law. The petitioner assails the constitutionality of section 138-a on the ground that it constitutes an unreasonable exercise of authority by an administrative body. He thus argues that the respondent Board of Elections unlawfully validated the 33 signatures.
Section 138-a, enacted in 1954 (L. 1954, ch. 745), was clearly designed to overcome the force of decisions which held that signatures using initials, or abbreviations, or the title ‘ ‘ Mrs. ’ ’ were invalid (Matter of Hall v. Heffernan, 185 Misc. 742, affd. 269 App. Div. 953, affd. 295 N. Y. 599; Matter of Lyden v. Sullivan, 269 App. Div. 942; Matter of Pavis v. Heffernan, 185 Misc. 626, affd. 269 App. Div. 912). The purpose of section 138-a has been recognized by the courts and its provisions enforced to permit the use of signatures with initials and abbreviations (Matter of McManus v. DeSapio, 13 Misc 2d 513, affd. 7 A D 2d 613, affd. 5 N Y 2d 773).
The petitioner cites no ease to uphold his contention of the unconstitutionality of section 138-a. We cannot see in what manner the Board of Elections is invested with an unlawful delegation of power. The statute permits the board to employ the register of voters to identify the signature; this, surely, is a reasonable means of identification. The process of identifica *55 tion is always a matter of judgment, and is sometimes difficult; that cannot he a ground for saying that the exercise of the authority is unreasonable. It may be recalled that the opinion of a lay witness — not an expert — is admissible to establish the genuineness of the handwriting of another (cf. Matthews v. Hill, 165 App. Div. 672; Gross v. Sormani, 50 App. Div. 531; Johnson v. Daverne, 19 Johns. 134). This contention of the petitioner is therefore overruled.
2. Six witnesses testified that they had signed their names, but not in the presence of the subscribing witness, who was the respondent La Pera in each instance. The respondent La Pera testified that he had seen them sign their names, although he had not obtained the signature in every case. He said that he had been accompanied by a friend who had solicited the signature, but had been within visual distance. This is not sufficient to authenticate the signatures (Matter of Johnson v. Westall, 208 Misc. 360, affd. 286 App. Div. 966; Matter of Stephens v. Heffernan, 186 Misc. 275; Matter of Bialis, 92 N. Y. S. 2d 450). The signatures are therefore invalid (Ethel D. Flynn, sheet 52, line 4; Catherine Kaine, sheet 20, line 16; Anthony Antonelli, sheet 7, line 3; Marian Schroeder, sheet 26, line 5; Anne Bernabie, sheet 40, line 6; Dorothy M. Brehaut, sheet 26, line 3).
In addition, the respondent La Pera admitted that he did not see Mrs. Antonelli sign (sheet 7, line 4). He also testified that Mr. Mar ello signed his wife’s name (sheet 2, line 13).
The total of these invalid signatures is 8.
3. The court is satisfied from the proof presented that 15 persons who signed the petition of the respondent La Pera had also signed the petitioner’s petition. The 15 signatures cannot be counted for the respondent La Pera (Election Law, § 138, subd. 6).
This brings the total of invalid signatures to 23.
4. One person testified that he had not signed the petition; that his wife’s signature was genuine, and that his name might have been written by his wife. Such a signature is, of course, invalid (John Giles, Jr., sheet 16, line 8).
Furthermore, the petitioner produced a handwriting expert who testified that in his opinion 45 signatures out of 62 signatures examined were not genuine. On cross-examination the witness admitted that signatures will vary under the circumstances, and that signatures on nominating petitions may be written in positions which will affect their usual appearance. In several instances he changed his opinion while testifying, after a closer examination of the signatures. The subscribing *56 witnesses testified that the persons whose names appeared on the petition had signed their names.
After considering all the testimony, the court cannot find that forgery of the 45 signatures was established. Where fraud is charged, it is elementary that the burden of proof lies on the party making the claim to establish it by clear and convincing evidence (Matter of McQuade v. Heffernan, 197 Misc. 990, affd. 277 App. Div. 947), consonant with the rule in any case when fraud is the issue that it is never presumed and cannot be based on conjecture or doubtful inference (Arthur v. Griswold, 55 N. Y. 400, 410; Ochenkowski v. Dunaj, 232 App. Div. 441). The court finds that the petitioner did not sustain the burden of proof as to the signatures claimed to be forgeries.
5. Finally, the petitioner contends that the petition of the respondent La Pera is so replete with errors, irregularities, fraud, and deception that under the maxim falsus in uno, falsus in omnibus, the inference must be drawn that other signatures on the petition not challenged are equally without validity, and that the entire petition consequently falls.
We have seen that the respondent Board of Elections found 139 signatures to be invalid; adding the 24 signatures determined by the court to be invalid, there is a total of 163 invalid signatures out of 568, or a remainder of 405 signatures, considerably more than the 273 signatures required.
Courts have struck down nominating petitions where wholesale fraud and unexplained wrongdoing have been shown to have been committed in their circulation, and the candidate named therein to have actively abetted and participated in the practices (see Matter of Bloom v. Power, 21 Misc 2d 885, affd. 9 A D 2d 626, supra; Matter of Vukelic, 23 Misc 2d 509, affd. 11 A D 2d 638). Irregularities which may have the effect of invalidating a signature is not enough to demonstrate the illegality of the petition as a whole. Thus, the courts have not considered that the improper authentication of several pages of a petition (Matter of Carroll v. Heffernan, 201 Misc. 974, affd. 280 App. Div. 883), the certification, falsely but not willfully made, that a person signed the petition in the presence of the subscribing witness (Matter of Johnson v. Westall, 208 Misc. 360, affd. 286 App. Div. 966, supra), the signing of one spouse’s name by another (Cole v. Winfield, 201 Misc. 1049, affd. 280 App. Div. 883; Matter of Contessa v. Powers, 25 Misc 2d 93), or even the existence of isolated instances of forgeries (Matter of Reilly v. Heffernan, 73 N. Y. S. 2d 312, affd. 272 App. Div. 964), have been sufficient to nullify the petition. The question in every case is whether the evidence of *57 irregularities and fraud is so ample that the validity of the petition as a whole is in doubt.
Here the petitioner’s proof does not compel that conclusion. One signature is shown not to he genuine; the witness says that his wife may have written it. Six witnesses testified that they had not signed their names in the presence of the respondent La Pera; he identified three of them in the courtroom before they testified. He admitted to irregularities in two signatures (Mrs. Antonelli; Mrs. Mar ello). This evidence does not justify the inference of wholesale fraud and deception. The application of the petitioner is denied, and the petition dismissed.