Lyman H. Smith, J.
This is a judicial review of an application to set aside the ministerial act of the Board of Elections of Monroe County in rejecting as invalid the independent nominating petitions of the “ Taxpayers’ Party” on the sole ground that the petitioners failed to set forth, opposite the signers’ names and in the date column, either in whole or in part, the date when each signer affixed his signature to the nominating petitions.
The application has been brought by one Dorothy Donoghue, an aggrieved party under section 330 of the Election Law, and one of five proposed candidates named in the disputed “ Taxpayers’ Party” petition as Councilman-at-Large for the City of Rochester in the general election to be held on the first Tuesday of November, 1969. The application to vacate the rejection of the Taxpayers’ Party petitions comes before this court pursuant to an order to show cause granted by Mr. Justice Livingston and referred by Special Term, the Honorable Arthur Ervin Buauvelt, presiding, to this part, for hearing and determination.
Other objections together with specifications thereof to the disputed nominating petition were timely filed by Basil Kyriakakis, individually, and as chairman of the Liberal Party of Monroe County, and he has been joined as a proper party in these proceedings pursuant to the afore-mentioned .show-cause order. Likewise, applicants’ fellow candidates for the office of Councilman-at-Large, viz., Lorna Diehl, Thomas Keller, Michael Roche and John Parrienello, have duly appeared in these proceedings. The respondent Board of Elections of Monroe County, has resisted the granting of relief sought herein, contending it is bound by the clear mandate of the Election Law (§ 138, subd. 1) which requires the dating of signatures on the nominating petitions.
The learned and able counsel for the interested parties have assisted the court and speeded the determination of the issues by a painstaking review of the disputed petition and other relevant designating petitions of other political parties. Their helpful stipulations of a multitude of material facts gleaned therefrom — testimonial proof of which would have otherwise occupied the court for many days — is to be commended. In this regard all counsel have reflected the highest and best tradi *1034 tions of their profession and the interested parties who have worked with them into the nighttime hours have likewise earned the commendation and thanks of this court.
The salient facts upon which the court must ground its determination appear as follows:
The disputed nominating petition (Exhibit No. 2), consisting of 103 numbered pages, plus one unnumbered page, and duly filed with the Board of Elections, contains 1,675 signatures. The respondent, Board of Elections, rejected the petition by letter, upon the ground that 368 signatures were invalid since no specific date, or at least an incomplete date, appeared opposite such signatures, thus leaving a total of 1,307 valid signatures, an insufficient number to place the party and its candidates on the November ballot (Election Law, § 138, subd. 5, par. [c]).
Specifically, it has been stipulated, and the court finds, that of 369 allegedly invalid signers (one additional invalid signature having been discovered upon the hearing), the month, the day and the year (1969) were omitted from the date column opposite 113 signatures, and that as to the remaining allegedly invalid signatures (i.e., 256), the designation of the year “ 1969 ” was omitted therefrom, although the specific month and purported day of the month were set down in the date column. As above indicated, the parties also commendably stipulated that all witnesses called, and to be called and sworn (all being solicitors of petitions, subscribing witnesses, and qualified voters) would testify that, where the notation of the month, day and the year (1969) had been omitted in the date column, the full date may be determined by the date appearing opposite a signature on a preceding or subsequent line and that, where only the specification of the year (1969) had been omitted, then the year (1969) may be determined from the printed portion of the petition itself, in which in two places, i.e., in the introductory and at the foot of the petition, the year “ 1969! ” is clearly set forth.
Further, it was stipulated that all witnesses (i.e., petition solicitors) would testify that all signatures appearing on the disputed petition were obtained between August 28, 1969 and ■September 5, 1969, both dates inclusive. It was also stipulated that the year 1969 is the first year since 1965 that an election to the office of Councilman-at-Large has been held in the City of Rochester, there being no election of Councilman-at-Large in the city in 1966, 1967 or 1968.
We deal here with the question of whether the omissions, either in whole or in part, of a correct date in the date column *1035 of the petitions should invalidate in each instance an otherwise valid signature.
The Board of Elections contend that such omissions and irregularities violate the statute (Election Law, § 138, subd. 1) and that these signatures may not he counted. The contention of the respondent board has the support of many learned decisions in our courts for more than a quarter of a century (see Matter of Bloom v. Power, 21 Misc 2d 885, 891; Matter of Nunley, 258 App. Div. 746; Matter of Boeckmann v. Clayton, 10 Misc 2d 981) in all of which decisions our courts have uniformly held that undated signatures are void and may not be counted. Also, it has 'been suggested that this court may not add to or subtract from the specific information, required in the petition and that, in no event, should it do so nunc pro tunc. However true that may be, the facts and circumstances here will not permit a view so rigid that the rights of elective franchise should be arbitrarily denied. Equity avoids the purely technical in order to preserve the faith of our citizens, not only in the administration of justice, but in instances like this, to preserve faith in the elective procedures which form the cornerstone of our democratic form of government.
There is no charge of fraud or wrongdoing in the instant case. At worst we find inadverent clerical omissions. It is worthy of note that the Election Law (§ 138, subd. 1) provides that the signer “ need not himself fill in the date, residence or residences, ward ” et cetera. Should the voter then, whose signature is otherwise valid, be denied his freedom of choice of candidates for public office because of mere failure to properly .set forth the date of his signature. In the instant case and absent proof of wrongdoing the answer to that question must be in the negative. Omissions or irregularities that do not confuse or deceive any enrolled voter or public officer may be overlooked. (Matter of Caffery v. Lawley, 21 AD 2d 749; Matter of Rosenbaum v. Power, 43 Misc 2d 377.)
Perhaps more important, it is clear upon the face of these petitions that the signatures were affixed in the year 1969. Indeed, all interested parties, as above indicated, have stipulated that the testimony of all witnesses called or to be called would fix the date of all signatures between August 28, 1969 and September 5, 1969 inclusive. No offer of proof to the contrary has been made by either the respondent board or any other objector. Obviously, it is unnecessary then' for this court ‘ ‘ to add to or subtract from” the petition. Prom any view the dates of obtaining the .signatures on these petitions are clear.
*1036 With regard then to the dates of the signing of these petitions, the applicant has carried her burden of proof and this court is compelled to conclude that, so far as proper dating is concerned, these nominating petitions were in substantial compliance with the provisions of the requirements of subdivision I of section 138 of the Election Law. (Matter of White v. Niagara County Bd. of Elections, 32 A D 2d 877, affd. 25 N Y 2d 787; also, see, Matter of Johnston v. Bliss, 175 Misc. 64.)
The court turns then to other objections leveled at the disputed petition (though not raised by the Board of Elections) which may now be resolved by this court under the mandate of section 330 of the Election Law. (See, also, Matter of Pavis v. Heffernan, 185 Misc. 626, affd. 269 App. Div. 912.)
Basically, these objections fall within two categories and will be considered seriatim.
The first objection is, that of the 1,675 otherwise qualified signers, there are 134 whose names appear on the previously filed designating petitions of other political parties. All parties have stipulated to the foregoing figure. Upon its review of the disputed petition the court reduced, due to duplication in the objections and specifications thereof, that figure to 122, but also found 16 additional duplicated affiliate signatures, making a total of 138 invalid signatures.
'Specifically, there were 138 signers’ names appearing on the designating petition of the Republican Party for the same office ('Councilman-at-Large) filed May 13, 1969, and it was stipulated II names appeared in duplicate on the designating petition of the Conservative Party, also filed May 13, 1969, thus making a total of 149 invalid signatures which may not be counted.
The statute is clear. Subdivision 6 of section .138 of the Election Law provides (L. 1969, ch. 675, eff. May 21, 1969): “ The name of a person signing such petition for an election for which voters are required to be registered shall not be counted * * * if the name of a person who has signed such a petition appears upon another petition designating or nominating the some or a different person for the same office. ’ ’
The provisions quoted above clearly prevent a flood of petitions creating a multiplicity of political parties. Lex dura sed lex. In addition, in its review of the disputed petition and in its comparative analysis with the Repulican nominating petition, this court has found that there are an additional 27 duplicate signatures appearing oh both the Republican designating petition and upon the disputed Taxpayers’ Party petition, making then a total of 176 invalid signatures of this type which may not be counted.
*1037 In the second category of objections it is conceded that there are 17 instances in which the signers all subscribed to their own signatures at the foot of the petition. Signatures so witnessed are invalid and may not be counted. (Matter of Hall v. Heffernan, 185 Misc. 742, affd. 295 N. Y. 599.) The desire and energy of the Taxpayers’ Party are of course commendable. Their work and organization in obtaining their petitions within a matter of days speak highly of their devotion to the democratic tradition. Nothing herein contained should be construed to discourage the ordinary political activity of this or any other group of concerned citizens who seek to promote good government and the election to public office of qualified citizens.
However, in view of the foregoing facts, the court must declare that of the 193 of the signatures appearing upon the disputed petition are void as follows: 176 because they are affiliated Republican Party or Conservative Party signers, 17 because they are both signers and witnesses, making a total of 193, which total subtracted from the original 1,675 brings the total of valid signatures below the required 1,500. (Election Law, § 138, subd. 5, par. [c].) Accordingly, the petition must be rejected.