OPINION OF THE COURT
Fred A. Dickinson, J.
This is a proceeding pursuant to Election Law § 16-102, brought by a citizen-objector to review the decision and determination of the Putnam County Board of Elections overruling certain of his objections and declaring valid the independent nominating petitions of the "Common Sense” party for the public offices of Town of Patterson Supervisor, Town Clerk, Town Justice, Councilman, Assessor, Tax Collector and Highway Superintendent.
FACTS
On August 20, 1991, an independent nominating petition was filed with the Board of Elections on behalf of the "Common Sense” party, bearing the emblem of a continental soldier, for the following candidates for the respective town offices of the Town of Patterson:
Lawrence M. Lawlor Supervisor
Jacqueline Schlange Town Clerk
John E. Enders Town Justice
Edmund P. O’Connor Councilman
John L. Owen Councilman
Frances I. Murphy Assessor
David M. Sweeney II Assessor
Sally T. Hamel Tax Collector
William H. Burdick Highway Superintendent
No contention is made by petitioner that the candidates listed thereon did not therefore file the required acceptances.
On August 23, 1991, petitioner Maguire filed a timely general objection to the petition, and on August 29, 1991 perfected his objection by timely filing specifications thereto.
The petitioner’s specifications include, inter alia:
category iv (40 signatures)
Forty persons who signed the petition were not registered to vote prior to the first day for signing independent nominating petitions.
On August 29, 1991, the Board met and sustained 18 of the *267 40 signatures in Category IV. No description was given of which signatures were declared invalid. The revised minutes accordingly reflected 136 valid signatures. On that date, the Board mailed to the petitioner a letter stating the petition was valid, without further explanation.
This proceeding was commenced by order to show cause dated September 3, 1991, and was served that day on all the candidates named on the "Common Sense” petition, and on the Putnam County Attorney’s office and the Board of Elections.
The Board’s return reflects a total gubernatorial turnout in Patterson of 2,867. After deducting the blank votes of 182 (see, Election Law § 6-142 [2]), the required number of valid signatures for an independent nominating petition for a town-wide office in Patterson is 5% of 2,685, or 134.25.
Thereafter, on September 11, 1991, pursuant to order, the Board filed a line-by-line determination of the signature validity, and on September 16,1991, filed certified copies of the buff card registration forms of 25 of the 40 signatures. Fifteen signers were either not registered to vote, or their signatures were illegible. On September 17, 1991, petitioner filed a reply, contending the 15 signatures must be stricken, that 7 signers were not timely registered, and arguing further that another 6 signatures were not supported or improperly supported by buff cards.
LAW
As a threshold matter, this court must determine the number of valid signatures required in order for the "Common Sense” party petition to be sufficient. The question arises as petitioner contends the number is 135; the Board of Elections, on the other hand, apparently believes the number to be 134, as reflected in the August 29, 1991 minutes.
As noted above, multiplying .05 by 2,685 yields a product of 134.25. Since Election Law § 6-142 (2) requires the number of signatures to be at least equal this amount, and as the Election Law does not authorize the Board to round down, nor does the law regard fractions, the number of valid signatures necessary for the petition in question is 135.
With regard to the specifications contained in Category IV, the failure to supply buff cards to verify that the signer of a petition was legally registered to vote results, in the absence of common-law proof, in the invalidity of the signature. (Mat *268 ter of Ryan v Sadowski, 71 AD2d 964 [2d Dept 1979]; Matter of Hinton v Howard, 93 AD2d 897 [2d Dept 1983].)
The burden of proof in an invalidation proceeding lies with the petitioner who filed objections thereto. (Matter of Civilette v Caccamise, 42 AD2d 1026 [4th Dept], affd 33 NY2d 730 [1973].) The Supreme Court is authorized to make specific findings as to the validity of signatures appearing on petitions (Matter of McNulty v McNab, 96 AD2d 921 [2d Dept 1983]), and may compare the signatures on petitions with those appearing on the buff cards. (Matter of Hall v Heffernan, 185 Misc 742, 744 [Sup Ct, Richmond County], affd 269 App Div 953 [2d Dept], affd 295 NY 599 [1945].)
As regards the signature of John J. Benanti, the specific objection lodged with the Board was that this voter was not registered. The Board supplied the buff card of John J. Benanti, address of Livonia Drive. The address on the petition is "6 Livonia Drive, E.D. 8”. The address and election district for the signature for which petitioner contends the buff card relates is identical.
(The court notes that the buff card states that John J. Benanti resides in ward 8, election district 2, and the court takes judicial notice of the fact that Patterson had no wards. Because the signer, if he called the Board of Elections to determine his election district, would have met with conflicting information, the court refuses to invalidate on this ground. [Cf., Matter of Berger v Acito, 64 AD2d 949, 950 (3d Dept), lv denied 45 NY2d 707 (1978) (confusion of election districts as a result of redistricting would not result in invalidation of signatures).])
However, on review, the court notes that "Common Sense” petition sheet 12, line 8 is signed by John J. Benanti, which is the name supplied on the buff card. The signature objected to is John J. Benanti, Jr.
The question presented is whether this court, in a proceeding to invalidate, may: (a) assume that the two signatures are by different people, and if not, (b) whether it may invalidate although the petitioner failed to file a specific objection on the ground of duplicate signatures.
Election Law § 6-134 (7) provides as follows: "The use of titles, initials or customary abbreviations of given names by the signers of designating petitions shall not invalidate such signatures provided that the identity of the signer as a registered voter can readily be established by reference to the *269 signature on the petition and that of a person whose name appears on the registration poll ledgers.”
The fact that a voter used the title "Jr.” would not invalidate his signature, providing that his signature on the petition compares favorably with that on the buff card supplied. (See, Matter of McManus v DeSapio, 13 Misc 2d 513, 522 [Sup Ct, Albany County], affd 7 AD2d 613 [3d Dept], affd 5 NY2d 773 [1958].)
There is a presumption that the same name which appears twice on a petition, bearing the same address, is by the same person. (Matter of Orange, 272 NY 61 [1936].) This presumption may be rebutted through extrinsic proof (Matter of Orange, 272 NY 61, supra; cf., Matter of Hinton v Howard, supra; Matter of Ryan v Sadowski, supra). It was petitioner’s burden to supply this proof. (Matter of Civilette v Caccamise, supra.) There is no evidence in the record that would permit this court to find that the signatures appearing on sheet 6, line 4 and sheet 12, line 8 were made by different people, one of whom was not registered. (Cf., Matter of Boyland v Miller, 143 AD2d 234 [2d Dept 1988].)
The court has compared the two petition signatures to the signature on the buff card supplied by the Board. There is no question that the signature on sheet 12, line 8 more closely resembles the buff card. Nevertheless, the court cannot say that the signature on sheet 6, line 4 is so dissimilar as to warrant its exclusion in the absence of extrinsic proof (Matter of Tani v Luddy, 32 Misc 2d 53 [Sup Ct, Westchester County 1961]), particularly as the Board has supplied the buff card to buttress that latter signature. The Board’s determination of the validity of signatures on petitions is presumptively correct. (Matter of Burns [Sullivan], 199 Misc 1005 [Sup Ct, Queens County], affd 278 App Div 1023 [2d Dept], affd 303 NY 601 [1951].)
The court therefore finds the presumption that the two signatures were made by the same person not to have been rebutted.
The next question becomes whether the court may invalidate on the ground of duplicate signatures when the specific objection lodged with the Board was that the voter was not registered.
There is authority that the Supreme Court has jurisdiction to hear challenges to signatures other than those specifically objected to before the Board of Elections, as long as the *270 challenges are made in such time that the respondents will be fairly apprised as to their substance. (Matter of Belak v Rossi, 96 AD2d 1011 [3d Dept], lv denied 60 NY2d 552 [1983], and cases cited therein.)
On the other hand, the Second Department, in an opinion affirmed by the Court of Appeals, has ruled that the court is limited to considering only those grounds specifically raised before the Board of Elections. (Matter of Brosnan v Black, 104 AD2d 469, 471 [2d Dept], affd 63 NY2d 692 [1984].)
However, three years after Brosnan (supra), the Fourth Department, following the Belak line of cases, permitted objections not previously raised to be asserted in a court proceeding, and did not cite Brosnan. (Matter of Levitt v Mahoney, 133 AD2d 516 [4th Dept 1987].) Furthermore, a recent Supreme Court case held that a litigant should not be excluded from raising legal arguments as to a petition where the litigant was not given sufficient information to raise the arguments previously. (Matter of Bradlow v Board of Elections, 144 Misc 2d 793, 796 [Sup Ct, NY County 1989].) The Bradlow court did not cite Brosnan either.
The court harmonizes these rulings and holds that, in an invalidation proceeding, the petitioner is permitted judicial review of those objections which, on the information available to the petitioner at the time of making the objection, the petitioner could not have raised when filing his objections pursuant to Election Law § 6-154.
By way of example, using the signatures presented to the court in the instant petition, if the Board had validated the signature of Diane McGowan on the ground that a Mary D. McGowan was registered, the petitioner would not be precluded from contesting this determination, as the use of a middle name for a first name would not fall within the safe harbor of Election Law § 6-134 (7). The law does not impose upon an objector the burden of speculating that a voter may have signed an alias or assumed name.
Similarly, if the Board had validated the signature of Thomas C. Smith on the ground that Smith was registered to vote, albeit in a different election district than that stated on the petition, the petitioner would not have been precluded from raising this objection, as the law does not require him to consult the registration books of every election district in a town to determine whether a voter is properly registered. (Matter of Hall v Heffernan, 185 Misc 742, supra; Matter of Liepshutz v Palmateer, 65 NY2d 965 [1985].)
*271 In the case before the bar, however, the presence of the two signatures was patent, appearing on the face of the petition. The petitioner could have raised the question of duplication at that time, enabling the Board to investigate the facts more fully. Because petitioner only raised the issue of lack of registration, and as the Board has provided a record alleged to prove the registration and signature of the voter, and as no extrinsic proof was supplied to meet petitioner’s burden in this proceeding, and on the authority of Brosnan (supra), the court holds the signature valid.
The Board’s determination with respect to the validity or invalidity of the 18 signatures of voters registered prior to July 9, 1991 is affirmed, and three signatures are deducted from all candidates.